[Civ. No. 1890. Second Appellate District.—May 11, 1916.]

THE PEOPLE ex rel. U. S. WEBB, Attorney-General et al., Appellants, v. SPENCER M. MARSH, Respondent.

COMMON LAW—WHEN APPLICABLE—SECTION 4468, POLITICAL CODE.— Under section 4468 of the Political Code the common law is the rule of decision only in those cases where it is not repugnant to or inconsistent with the constitution of the United States, or constitution or laws of this state.

ID.—PUBLIC OFFICERS — RESIGNATION—MODE OF.—Section 995 of the Political Code declares the mode in which a public officer may resign his office, namely, that it must be in writing, and if the incumbent be a county officer not commissioned by the Governor, it shall be made to the clerk of the board of supervisors.

ID.—DEFINITION OF "RESIGN" AND "RESIGNATION."—The word "resign" is defined to "give up an office or trust," and "resignation" as being "the act of resigning or giving up, as a claim, possession, or position."

ID.—VACANCY IN OFFICE—HOW CREATED.—Under section 996 of the Political Code an office becomes vacant on the happening of any of the events therein specified before the expiration of the term, including the resignation of the officer, and, under this statute, a vacancy arises when the incumbent resigns in the mode provided by law, subject to the terms contained in his letter of resignation.

ID.—RESIGNATION OF DISTRICT ATTORNEY—ACCEPTANCE UNNECESSARY.— The resignation of the district attorney of a county which is in writing and in accordance with the statute, and by its terms to take effect upon delivery to the clerk of the board of supervisors, becomes effective immediately upon delivery to such clerk, and it is not necessary that it shall be accepted by the board of supervisors; and an attempt by the party, after delivery of the resignation to the clerk, and before its acceptance by the board, to withdraw the same, is of no effect.

ID.—FILING PAPERS — WHAT CONSTITUTES.—No express provision is made in the law providing that a letter of resignation shall be filed,

but, like documents which are required to be filed, the delivery thereof to the clerk of the board of supervisors, he being the officer designated by section 995 of the Political Code, to whom the resignation shall be made, constitutes the filing thereof; and it is not necessary to indorse such document as filed, the file-marks being only evidence of the fact of such delivery.

ID.—VACANCY—APPOINTMENT OF SUCCESSOR.—Conceding that one who has tendered his resignation in the mode prescribed by statute to take effect immediately, or upon the delivery of the document to the clerk, may nevertheless hold over until his successor is appointed, such fact is not inconsistent with the theory that a vacancy exists in the office to be filled by the appointing power.

APPEAL from a judgment of the Superior Court of San Diego County. W. A. Sloane, T. L. Lewis, and W. R. Guy, Judges.

The facts are stated in the opinion of the court.

Henning & McGee, for Appellants.

Luce & Luce, for Respondent.

SHAW, J.—The purpose of this proceeding was to determine the title to the office of district attorney of San Diego County.

It appears from findings of the court as to which there is no controversy, that on June 22, 1915, D. V. Mahoney was the duly elected, qualified, and acting district attorney of San Diego County; that on said date he signed and delivered to C. H. Swallow, a member of the board of supervisors of said county, his resignation of the office of district attorney, a copy of which document is as follows:

"June 22, 1915.

"To the Honorable Board of Supervisors of the County of San Diego, State of California.

"Gentlemen:

"I hereby tender to your Honorable Body my resignation from the office of District Attorney of the County of San Diego, State of California, and ask that the same be accepted and take effect on the filing of this my resignation with the Clerk of the Board of Supervisors of the County of San Diego, State of California.        D. V. MAHONEY,

"District Attorney of the County of San Diego, State of California."

That at about 7 :30 o'clock P. M. on said June 22d, Swallow
went to the home of B. Allen, who was a deputy county clerk
and acting clerk of the board of supervisors, to whom he de-
livered said resignation so received by him from Mahoney,
upon which said Allen at the time indorsed the words:
"Filed June 22, 1915, J. T. Butler, Clerk, By B. Allen,
Deputy." And on the following morning, June 23d, upon
reaching the county clerk's office where she was employed
as such deputy, she delivered the document to J. T. Butler,
county clerk and *ex-officio* clerk of the board of supervisors,
who retained the same in his custody until June 28, 1915,
at which time it was presented to a special meeting of the
board of supervisors duly convened pursuant to a call there-
for, notice of which as served stated that it was "for the
purpose of considering and accepting the resignation of D.
V. Mahoney as district attorney and, if accepted, appointing
his successor"; at which time, all the members of the board
being present, the resignation of Mahoney was accepted, and
the respondent, Spencer M. ·Marsh, was elected to fill the
vacancy. At this meeting of the board of supervisors so
held on June 28th, and before the board had taken any ac-
tion with regard to said resignation or the election of Marsh
to fill the vacancy, Mahoney caused to be served on the board,
and each member thereof, a written notice of revocation,
stating therein that he withdrew and recalled the resignation
theretofore tendered. In addition to these facts as to which,
as stated, there was no controversy, the court upon con-
flicting evidence, ample in tendency, however, to support the
same, found that the delivery of said resignation by Swallow
to the clerk, and the filing thereof, was in obedience to the
instructions of Mahoney given to Swallow when the docu-
ment was delivered to him, and that at the time Mahoney was
mentally competent and well knew the purport and effect
of the same, and intended the resignation to go into effect·
according to the terms thereof. As a conclusion of law, the
court found in effect that the resignation was duly made to
the clerk of the board of supervisors of said county and be-
came effective on June 23, 1915, by reason of which a vacancy·
existed in the office of district attorney of said county; that
Spencer M. Marsh was duly elected to fill the vacancy on
June 28, 1915, on which date he was and ever since has been
entitled to said office by virtue of said election.

Judgment followed for the respondent, from which the relator appeals.

Appellant's chief contention is that the question presented must, under section 4468 of the Political Code, be determined by applying the common-law rule which denied the right of a public officer to resign his office without the consent of the appointing power manifested by an express acceptance of the resignation or in some other mode equally significant of its intention so to do (Mechem on Public Officers, sec. 414; Throop on Public Officers, sec. 409; *Edwards* v. *United States*, 103 U. S. 471, [26 L. Ed. 314]; *Reiter* v. *State*, 51 Ohio St. 74, [23 L. R. A. 681, 36 N. E. 943]); and if this be true, it follows, says appellant, there was no vacancy, since, before the resignation was accepted, Mahoney, as he had a right to do (*People* v. *Porter*, 6 Cal. 26; *People* v. *Board of Police*, 26 Barb. (N. Y.) 481, 487; *State* v. *Murphy*, 30 Nev. 409, [18 L. R. A. (N. S.) 1210, 97 Pac. 391, 720]), recalled and withdrew his letter of resignation. Section 4468 of the Political Code, however, declares the common law to be the rule of decision *only in those cases* where it is not repugnant to or inconsistent with the constitution of the United States, or constitution or laws of this state. Conceding the common-law rule as stated, which it may be noted was based upon a theory not in harmony with, but entirely at variance with, the modern idea which prevails as to a public office, and conceding also, where acceptance is necessary to render the resignation effective, the right of a public officer who has tendered his resignation to recall it at any time before it is accepted, we are nevertheless of the opinion that such rule has been abrogated in this state by statutory provisions. Webster defines the word "resign," "to give up an office or trust"; and defines "resignation" as being "the act of resigning or giving up, as a claim, possession or position." Section 996 of the Political Code declares that "An office becomes vacant on the happening of either of the following events before the expiration of the term: 1. The death of the incumbent; 2. . . . 3. His resignation; . . ." Now, since resignation means, as stated, the act of giving up a claim, possession, or position, it seems to clearly follow, under this provision of the statute, that a vacancy arises when the incumbent resigns in the mode provided by law, subject of course to the terms contained in the letter

of resignation. Section 995 of the Political Code declares the mode in which a public officer may resign his office, namely, that it must be in writing, and if the incumbent be a county officer not commissioned by the Governor, that it shall be made to the clerk of the board of supervisors. In the case at bar it was in writing, and since it was, as intended to be by appellant, delivered to and filed with the clerk of the board of supervisors, it was made in full compliance with the statute. We are aware that authorities may be found which appear in conflict with this conclusion. Reference to them, however, shows they were based upon the finding of the court that no statute existed upon the subject changing the common-law rule, such as *Edwards* v. *United States,* 103 U. S. 471, [26 L. Ed. 314], a Michigan case, where it was held the common-law rule prevails. The case of *Kane* v. *Jones,* decided by the supreme court of Washington, 46 Wash. 631, [91 Pac. 2], involved a statute identical with section 996 of the Political Code of this state, under which the court, after reviewing the authorities from a number of states, held that the common-law rule prevailed in that state. After referring to section 1548 of the Washington Code, corresponding with said section 996 of our Code, the court said: "We see nothing in the above which changes the common-law rule. It is true it is declared that an office shall become vacant upon the resignation of the incumbent, *but nothing is said about the method of effecting a resignation.* [Italics ours.] The silence of the statute in that regard should be construed to mean that the established common-law method still obtains." It will be noted that our statute, section 995 of the Political Code, in express terms declares the method of effecting a resignation which, according to the supreme court of Washington, was wanting in the laws of that state. A number of authorities are cited by respondent in support of the contention that the acceptance of a resignation is not necessary to create a vacancy, but that the vacancy is created by the act of the public officer by delivering his written resignation to the appointing power or official authorized by law to receive the same for such depositary. Among the early cases so holding is that of *People* v. *Porter,* 6 Cal. 26, where it is said: "The tenure of an office does not depend on the will of the executive, but of the incumbent. . . . There can be no doubt that a civil officer has a right to

resign his office at pleasure, and it is not in the power of the executive to compel him to remain in office. . . ." Notwithstanding the fact that this case has been frequently accepted by the courts of other states as an authority in support of the proposition, it is claimed, not without ground therefor, that what was there said upon the subject was not necessary to a determination of the case, and therefore *dictum*. In a Wisconsin case, *State* v. *Kotecki*, 155 Wis. 66, [144 N. W. 200], where it was contended that a resignation without an acceptance does not vacate an office, the court, after stating that counsel for defendant cites many cases holding the contrary, continues: "Fortunately section 962, Stats. 1911, settles the controversy. It provides: 'Every office shall become vacant on the happening of either of the following events: (1) The death of the incumbent. (2) His resignation.' So it must be held that upon the filing of the resignation of the relator the office was vacated."

Our conclusion is based not upon the authorities, concededly conflicting, bearing upon the question, but upon the fact, as declared in section 4 of the Civil Code, that "the code (sections 995 and 996, Political Code), establishes the law of this State respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects." Thus construed, we entertain no doubt that the provisions referred to gave appellant "the privilege of resignation as an absolute right, without any restrictions" (*State* v. *Murphy*, 30 Nev. 409, [97 Pac. 391, 720, 18 L. R. A. (N. S.) 1210]), and his resignation delivered to the officer designated (by law) to receive it, he having no duty to perform in supplying a successor, the mere receipt thereof by such officer rendered it effective and created a vacancy in the office as intended by him, immediately upon its being filed with, that is, delivered to, the clerk of the board of supervisors, which occurred several days before the time of the recall and withdrawal thereof. (*United States* v. *Justices of Lauderdale County*, 10 Fed. 460, and cases cited.)

According to our view of the case, it is unnecessary to further review and distinguish the authorities cited by the respective parties as bearing upon the proposition submitted. Necessarily they involve the statutes of the states in which the cases arose.

By its terms the resignation was to take effect upon being filed with the clerk. No express provision is made in the law providing that a letter of resignation shall be filed, but, like documents which are required to be filed, the delivery thereof to the clerk of the board of supervisors, he being the officer designated by section 995 of the Political Code to whom the resignation should be made, constituted the filing thereof. In practice the filing of a document, so far as concerns the act of the party, consists simply in placing the paper in the hands of the clerk to be preserved and kept by him in his official custody as an archive or record of which his office is the repository, subject to such use and reference thereto as the nature of the document contemplates. While it is usual for the clerk to indorse such document, giving the date of its delivery, such file-marks are but evidence of the fact of such delivery. In *Tregambo* v. *Comanche M. and M. Co.,* 57 Cal. 501, it is said: ''A paper in a case is said to be filed when it is delivered to the clerk and received by him, to be kept with the papers in the cause. . . . Filing a paper consists in presenting it at the proper office, and leaving it there, deposited with the papers in such office.'' And in *Edwards* v. *Grand,* 121 Cal. 254, [53 Pac. 796], it is said: ''An instrument is filed for record when it is deposited in the proper office, with a person in charge thereof, with directions to record it.'' Here, there was no cause, and hence no other papers; nor is there any provision requiring the resignation to be recorded. Hence the filing was complete when it was delivered to the proper officer and by him received for the purpose for which it was intended. Neither is the alleged fact that the clerk, for purposes of his own, suppressed information that Mahoney had resigned, nor the fact that three members of the board of supervisors in calling the special meeting stated that it was for the purpose of accepting Mahoney's resignation, of any weight in determining the question, since, under the foregoing views, it is obvious that neither the clerk by his acts, nor the board of supervisors, could compel the incumbent to retain the office against his will.

Appellant cites section 879 of the Political Code, declaring that ''Every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified,'' and basing his argument thereon, insists there could be no vacancy, since under the provisions of this

section appellant was required to continue in office until his successor was qualified. As well suggested by the trial judge, "counsel's argument would lead to the conclusion that there could be no vacancy until a successor was appointed, and there could be no successor appointed until there was a vacancy." While there appears to be a conflict of authority as to whether such provision as that contained in section 879 is applicable in the case of a resignation of a public officer where, to complete the same, no acceptance thereof is required, the decisions of our own supreme court seem to justify the conclusion that the provision applies not only to one whose term has expired, but as well where the incumbency is ended by resignation; the continuance in office being regarded as temporary; or, as stated in *People* v. *Ward,* 107 Cal. 236, [40 Pac. 538] : "He is a makeshift merely, *locum tenens,* temporarily filling a public office which it is not expedient to permit to stand vacant without an incumbent." To the same effect is *People* v. *Nye,* 9 Cal. App. 148, [98 Pac. 241]. Hence, conceding that one who has tendered his resignation in the mode prescribed by statute to take effect immediately, or, as here, upon the delivery of the document to the clerk, may nevertheless hold over until his successor is appointed, such fact is not inconsistent with the theory that a vacancy exists in the office to be filled by the appointing power.

For the reasons given, the judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 10, 1916.