[S.F. No. 23688. Sept. 22, 1978.]

JAMES H. ARMISTEAD, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

COUNSEL

Turner & Sullivan and Robert J. Sullivan for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Steven A. Merksamer, Talmadge R. Jones and Robert L. Mukai, Deputy Attorneys General, for Defendants and Respondents.

OPINION

NEWMAN, J.—When a state employee submits a written resignation and then six days later withdraws it, may his employer "accept" the resignation? The State Personnel Board and the Department of Water Resources, respondents here, answer Yes. They rely on section 525.11 of the board's Personnel Transactions Manual (PTM), which reads: "An employee who resigns effective at some future date may withdraw his resignation before the effective date of that resignation and continue in employment only with the approval of the appointing power. If the

appointing power does not wish to accept this withdrawal, the resignation will become effective upon the date originally stated."

Government Code section 19502 provides: "Resignations from the state civil service are subject to board rules. . . ." The board rule that applies here is No. 445 (Cal. Admin. Code, tit. 2, § 445), which states: "An employee may resign from state service by submitting a written resignation to the appointing power. . . ."

Applying that rule we see no reason for denying an employee the right to withdraw a resignation he has submitted, assuming that (1) it has not yet been accepted, (2) the time he set for resignation has not yet expired, (3) the appointing power has not been prejudiced by any reliance on his letter or other form of notice.[1]

PTM section 525.11, quoted above, does not govern or guide us here because it is an invalid rule. It is invalid because it was not duly promulgated and has not been duly published. For future cases the board, if it so chose, could validate it by ensuring compliance with chapter 4.5 of the California Administrative Procedure Act (Gov. Code, §§ 11371-11445).

The board argues that PTM section 525.11 does not reflect "the exercise of any quasi-legislative power" (see Gov. Code, § 11420), "relates only to the internal management of the state agencies" (see § 11371, subd. (b)), and therefore was exempt from the Administrative Procedure Act (APA). We now discuss those arguments.

*What is "quasi-legislative power"?*

Concerning the Legislature's intent as to agency rulemaking generally, two sections of the Government Code are illuminating (and demonstrate

---

[1]The notice that appellant here delivered to his Water Resources supervisor on December 11, 1974, reads: "This memo is to inform you that I intend to resign at the end of all accumulated vacation." His subsequent withdrawal on December 17 stated: "This memorandum is to inform you that, due to family considerations, I do no longer intend to resign as previously stated." On December 18, with knowledge of the withdrawal, a personnel officer wrote a letter purporting to accept the first memo's resignation.

Appellant's request that the board set aside the acceptance of his resignation was refused, and he sought a writ of mandate. The trial court sustained the board's demurrer without leave to amend.

Why were appellant's two memos treated as resignations rather than as notices regarding his intent to resign? The parties and the trial judge seem not to have considered that question.

a desire to achieve in the California APA a much greater coverage of rules than Congress sought in the federal APA[2]). Section 11420 states: "It is the purpose of this article [art. 4 of ch. 4.5] to establish basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations. Except as provided in Section 11421, the provisions of this article are applicable to the exercise of any quasi-legislative power conferred by any statute heretofore or hereafter enacted, but nothing in this article repeals or diminishes additional requirements imposed by any such statute. The provisions of this article shall not be superseded or modified by any subsequent legislation except to the extent that such legislation shall do so expressly."

Section 11371, subdivision (b) states: " 'Regulation' means every rule, regulation, order, or standard of general application or the amendment, supplement or revision of any such rule, regulation, order or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of the state agencies. 'Regulation' does not mean or include any form prescribed by a state agency or any instructions relating to the use of the form, but this provision is not a limitation upon any requirement that a regulation be adopted pursuant to this part when one is needed to implement the law under which the form is issued."

Legislative views regarding personnel board rules and the PTM are evidenced by this excerpt from the First Report of the Senate Interim Committee on Administrative Regulations to the 1955 Legislature (pp. 37-38):

"The authority for the adoption of regulations is found in various sections of the Civil Service Act, and the board is subject to and follows the procedure for adoption of regulations as specified in the Administrative Procedure Act.

"The formal regulations cover most of the facets of administrative problems in administering the personnel of the State, including employment list examinations, promotions, appointments, reinstatements, probations, performance reports, absences, vacations, sick leaves, transfers, separations, layoffs and demotions, and hearings.

---

[2]See 5 United States Code section 552(a)(1)(D) and (a)(2)(B); also section 553(b)(A) and (d)(2); Asimow, *Public Participation in the Adoption of Interpretive Rules and Policy Statements* (1977) 75 Mich.L.Rev. 521.

"In addition to the formal regulations of the Personnel Board as contained in the Administrative Code, the board issues what is termed the 'State Personnel Board Transactions Manual,' which is supplemented from time to time by interdepartmental communications. The contents of the manual are not filed as regulations nor are they adopted as regulations. The manual contains instructions concerning all the operations of the Personnel Board keyed to the various forms which are necessary in carrying out the work of the board. Some of the material contained in the Personnel Board Transactions Manual is regulatory in nature, although not adopted in accordance with the Administrative Procedure Act.

"The committee recommends that the authority for the board to adopt regulations be specifically referred to the Administrative Procedure Act for the procedure to be followed, and that the board be prohibited from including regulations in manuals and enforcing such regulations unless they are first adopted in accordance with the Administrative Procedure Act."

Those two Government Code sections and that excerpt from the Senate committee report make it clear that section 525.11 and comparable rules in the PTM clearly are the product of rulemaking and, thus, do reflect an exercise of quasi-legislative power within the meaning of the California APA.

### *What rules relate only to internal management?*

Section 11371, subdivision (b) of the APA, quoted above, exempts every rule that "relates only to the internal management of the state agencies." The board argues that PTM section 525.11 is such a rule. We disagree.

PTM section 525.11 is designed for use by personnel officers and their colleagues in the various state agencies throughout the state. It interprets and implements board rule 445. It concerns termination of employment, a matter of import to all state civil service employees. It is not a rule governing the board's internal affairs. (Cf. *City of San Marcos* v. *California Highway Com.* (1976) 60 Cal.App.3d 383, 408 [131 Cal.Rptr. 804] "Respondents have confused the internal rules which may govern

the department's procedure . . . and the rules necessary to properly consider the interests of all . . . under the . . . statutes . . . .")[3]

■ The board argues that, since the PTM is supposed to be distributed only to personnel officers and since others' requests to see it are screened to ensure that reasons for examining it are legitimate, we should infer that it was written for internal use only. That it is not readily accessible to affected employees and the public does not persuade us that section 525.11 relates to internal management only. The section obviously was intended to be generally applied, to make specific for all state civil service employees the limits on their right to withdraw resignations. In fact, the insistence on restricted access does indeed increase our concern. (See art. 2 of ch. 4.5 of the APA, which governs the filing and publication of rules; cf. *Martin* v. *State Personnel Bd.* (1975) 46 Cal.App.3d 558, 561 [120 Cal.Rptr. 160], which does not discuss the APA.)

*Should section 525.11 be given weight*
*as an administrative interpretation?*

The board argues that, even if section 525.11 is invalid because of APA requirements, it still merits deference as an interpretation by the administrators of a rule that needs interpretation.

A major aim of the APA was to provide a procedure whereby people to be affected may be heard on the merits of proposed rules. Yet we are here requested to give weight to section 525.11 in a controversy that pits the board against an individual member of exactly that class the APA sought to protect before rules like this are made effective. That, we think, would permit an agency to flout the APA by penalizing those who were entitled to notice and opportunity to be heard but received neither.

Under sections 11371, subdivision (b), 11420 and 11440 of the APA, rules that interpret and implement other rules have no legal effect unless they have been promulgated in substantial compliance with the APA.

---

[3]Compare *Poschman* v. *Dumke* (1973) 31 Cal.App.3d 932 [107 Cal.Rptr. 596], which held a rule affecting tenure of teachers invalid for failure to comply with the APA. The court rejected Chancellor Dumke's contention that the rule related only to internal management, stating: "Tenure within any school system is a matter of serious consequence involving an important public interest. The consequences are not solely confined to school administration or affect only the academic community." (*Id.*, p. 943.)

We disapprove, however, the implied holding in *Poschman* that the whole of article 4 of chapter 4.5 of the APA applies to regulations prescribing an agency's organization or procedure. See section 11421, subdivision (a).

Therefore section 525.11 merits no weight as an agency interpretation. To hold otherwise might help perpetuate the problem that more than 20 years ago was identified in the First Report of the Senate Interim Committee on Administrative Regulations, *supra,* as follows (at pp. 8-9):

"The committee is compelled to report to the Legislature that it has found many agencies which avoid the mandatory requirements of the Administrative Procedure Act of public notice, opportunity to be heard by the public, filing with the Secretary of State, and publication in the Administrative Code.

"The committee has found that some agencies did not follow the act's requirements because they were not aware of them; some agencies do not follow the act's requirements because they believe they are exempt; at least one agency did not follow the act because it was too busy; some agencies feel the act's requirements prevent them from administering the laws required to be administered by them; and many agencies . . . believe the function being performed was not in the realm of quasi-legislative powers. . . .

"The manner of avoidance takes many forms, depending on the size of the agency and the type of law being administered, but they can all be briefly described as 'house rules of the agency.'

"They consist of rules of the agency, denominated variedly as 'policies,' 'interpretations,' 'instructions,' 'guides,' 'standards,' or the like, and are contained in internal organs of the agency such as manuals, memoranda, bulletins, or are directed to the public in the form of circulars or bulletins."

*Did appellant have a right
to withdraw his resignation?*

Appellant contends that his withdrawal of the resignation was effective since, apparently, he submitted it before the resignation had been accepted, before the effective date he proposed in the resignation, and before his employers took any action in reliance on it.

Judicial opinions have not been consistent on the question of whether a resignation effective at a future date may be withdrawn prior to that date. (See *Hamm* v. *City of Santa Ana* (1969) 273 Cal.App.2d 84, 89-90 [78 Cal.Rptr. 102], and cases cited therein.) In *People* v. *Porter* (1856) 6 Cal.

26 this court held (1) that a judge's resignation was effective on the date stated therein, and (2) that no acceptance by the appointing power was required to make it effective. The opinion suggests, further, that the judge did have power prior to the effective date to withdraw the resignation and continue in office. (*Id.,* p. 28.)

The board contends that we should reject that suggestion and follow a line of subsequent decisions indicating that (absent a statute, ordinance, or rule authorizing withdrawal) an employee's resignation is binding once submitted. (See *Hamm* v. *City of Santa Ana, supra,* 273 Cal.App.2d 84; *People* v. *Marsh* (1916) 30 Cal.App. 424 [159 P. 191].) We do not find those cases persuasive.

After noting that case law "discloses a wide spectrum of views," the court in *Hamm* (273 Cal.App.2d at p. 89) held that a civil service employee would have had a right to withdraw his resignation if he had complied with an ordinance providing a procedure for withdrawal. Words in the opinion implying that, absent such an ordinance, he would have had no such right were dicta.

*People* v. *Marsh, supra,* 30 Cal.App. 424 rejected the *Porter* dictum and held that a district attorney had no right to withdraw his resignation even when he attempted to do so before it was accepted. While the rule there stated makes no reference to the facts presented, it is interesting to note that the district attorney submitted his withdrawal at a board of supervisors meeting specially called to accept his resignation and appoint his successor. Thus action may well have been taken by the board in reliance on the resignation before the meeting was held (for example efforts to recruit his successor, who in fact was appointed at the meeting).

We see no reason to depart from the dictum stated so long ago in *Porter.* Absent prejudice, why should an employer be entitled to refuse a withdrawal submitted before the effective date stated in the resignation? (Cf. *California Teachers Assn.* v. *Governing Board* (1977) 70 Cal.App.3d 833, 843 [139 Cal.Rptr. 155].)

We therefore hold that, unless valid enactments provide otherwise, an employee is entitled to withdraw a resignation if she or he does so (1) before its effective date, (2) before it has been accepted, and (3) before the appointing power acts in reliance on the resignation. To the extent they are inconsistent with views expressed in this opinion *Hamm* v. *City*

*of Santa Ana, supra,* 273 Cal.App.2d 84 and *People* v. *Marsh, supra,* 30 Cal.App. 424 are disapproved.

Because the order sustaining the board's demurrer was improper, the judgment of dismissal is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Manuel, J., concurred.