[Civ. No. 56899. Second Dist., Div. Five. June 30, 1980.]

AMERICAN FEDERATION OF TEACHERS, LOCAL NO. 1050 et al., Plaintiffs and Respondents, v.
BOARD OF EDUCATION OF THE PASADENA UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

830

**COUNSEL**

John H. Larson, County Counsel, and Donovan M. Main, Deputy County Counsel, for Defendant and Appellant.

Levy & Goldman, Elizabeth Garfield, Abe F. Levy and Gerald Goldman for Plaintiffs and Respondents.

**OPINION**

STEPHENS, J.—The Board of Education of the Pasadena Unified School District (hereinafter Board) appeals from a judgment granting a peremptory writ of mandate in favor of respondent Sidney D. Knowlton, a former certificated employee of the Pasadena Unified School District (hereinafter District).[1]

The issue presented on appeal is whether the governing board of a school district may validly delegate to its district superintendent the authority to accept the resignations of district employees.

---

[1] The Board was ordered, inter alia, to reinstate Knowlton to his employment as a teacher and to compensate him for damages sustained "by reason of the Board's wrongful termination of Knowlton."

## FACTS

The essential facts are not in dispute. Respondent, Knowlton, was originally employed as a teacher by the District in September 1975. On October 18, 1977, Knowlton sent a memorandum to the district superintendent, Ramon Cortines, stating his resignation from employment with the District. The memorandum stated: "I hereby resign my job at Muir High School, this day Oct. 18, 1977.

"I thank you for the opportunity to teach at this school, and wish the school and the district my sincere best.

"I intend to follow a writing career and will need much of my time for research and composition.

"Sincerely

SIDNEY D. KNOWLTON"

Superintendent Cortines (hereinafter Cortines), in response, sent a memorandum to Knowlton, on the same date, October 18, 1977. Cortines' memorandum stated: "I accept your resignation dated October 18, 1977.

"You will receive pay warrants through January 1, 1978. They may be picked up in Mr. Lambert's office or mailed to an address of your choice."

The Board contends that the superintendent's acceptance of Knowlton's resignation was effective as of October 18, and was made pursuant to Education Code section 44930 and district policy 5720.

Section 44930 of the Education Code reads as follows: "Governing boards of school districts shall accept the resignation of any employee and shall fix the time when the resignation takes effect, which shall not be later than the close of the school year during which the resignation has been received by the board."

District policy 5720 reads as follows: "The Superintendent of Schools, or his designee, shall be authorized by the Board of Education to officially accept the resignation of any employee. The resignation shall be effective at the time of receipt by the Superintendent."[2]

---

[2]This designation was adopted by the Board in March 1972.

On October 24, 1977, Knowlton sent a letter to Cortines attempting to rescind his resignation.[3] The following day, October 25, the District's assistant personnel director responded to Knowlton's letter, informing him that his resignation had been accepted pursuant to policy 5720 and would not be rescinded by the District.[4] On the same day the Board set Knowlton's period of service and pay as extending through December 31, 1977.

Knowlton has been refused employment since December 31, 1977.

The trial court concluded, as a matter of law, that the power to accept employee resignations cannot be delegated to the district superintendent, and that Knowlton's rescission of his resignation on October 24, prior to the action taken by the Board, was therefore valid.

Appellant contends that an employee's offer to resign from his employment and the acceptance of that offer are matters of contract, and therefore may be delegated by a school district governing board to its district superintendent pursuant to Education Code section 39656.[5]

---

[3]This letter reads: "Dear Superintendent Cortines:

"This is to rescind my letter to you dated October 18, 1977 which tendered my resignation from the Pasadena Unified School District as of that date.

"Upon re-evaluation I now find that my resignation letter and decision at that time was done in haste and in fact was premature.

"Therefore I respectfully request that: (1) the October 18, 1977 letter be removed from my file as well as not be presented to the Board of Education for their action, and (2) that I immediately be reinstated my teaching position at Muir High School."

[4]This letter read as follows: "Dear Mr. Knowlton:

"The Superintendent has requested that I respond to your letter of October 24, 1977, in which you have requested that your resignation of October 18, 1977 be rescinded.

"The Pasadena Unified School District has accepted your resignation when tendered and at the Superintendent's direction, I am instructed to inform you that such resignation shall not be rescinded by the Pasadena Unified School District.

"This action is taken under Board of Education Policy 5720...."

[5]Section 39656 provides in pertinent part as follows: "Wherever in this code the power to contract is invested in the governing board of the school district or any member thereof, such power may by a majority vote of the board be delegated to its district superintendent,... Such delegation of power may be limited as to time, money or subject matter or may be a blanket authorization in advance of its exercise, all as the governing board may direct; provided, however, that no contract made pursuant to such delegation and authorization shall be valid or constitute an enforceable obligation against the district unless and until the same shall have been approved or ratified by the governing board, said approval or ratification to be evidenced by a motion of said board duly passed and adopted. In the event of malfeasance in office, the school district official invested by the governing board with such power of contract shall be personally liable to the school district employing him for any and all moneys of the district paid out as a result of such malfeasance."

Accepting the applicability of section 39656, the trial court construed that section as dictating that "the making of a contract by the superintendent is not complete until approval or ratification by the Board." The court therefore found that "[s]ince acceptance of Knowlton's offer of resignation was dependent upon board action, it remained an offer until that time and could be withdrawn by him prior to board action." On this basis the court granted petitioner's peremptory writ of mandate.

I

Education Code section 39656 is inapplicable to the contractual setting of school district employees' resignations.

"As a general rule, powers conferred upon public agencies and officers which involve the exercise of judgment or discretion are in the nature of public trusts and cannot be surrendered or delegated to subordinates in the absence of statutory authorization." (*California Sch. Employees Assn. v. Personnel Commission* (1970) 3 Cal.3d 139, 144 [89 Cal.Rptr. 620, 474 P.2d 436]; see also *City and County of San Francisco v. Cooper* (1975) 13 Cal.3d 898, 923-924 [120 Cal.Rptr. 707, 534 P.2d 403]; *Coleman v. Regents of the University of California* (1979) 93 Cal.App.3d 521, 524-525 [155 Cal.Rptr. 589]; *San Francisco Fire Fighters v. City and County of San Francisco* (1977) 68 Cal.App.3d 896, 901 [137 Cal.Rptr. 607].)

"On the other hand, public agencies may delegate the performance of ministerial tasks,..." (*California Sch. Employees Assn, supra*, at pp. 144-145.)

As previously stated, the power of a school district governing board to accept employee resignations is set forth in Education Code section 44930 (which, for convenience, is here restated): "Governing boards of school districts shall accept the resignation of any employee and shall fix the time when the resignation takes effect, which shall not be later than the close of the school year during which the resignation has been received by the board."

In March of 1972, pursuant to Education Code section 44930, the Board adopted district policy 5720, which was in effect throughout the events herein and which authorizes the superintendent to officially accept employee resignations, also stating that the "resignation shall be

effective at the time of receipt by the Superintendent." (See *ante*, p. 832.)

■ Section 44930 of the Education Code and district policy 5720 were parts of petitioner's employment contract and legal relationship with the Pasadena Unified School District. (See *Fry* v. *Board of Education* (1941) 17 Cal.2d 753, 760 [112 P.2d 229].)[6]

Appellant contends that the "contractual powers of the governing board of a school district may be delegated to the District Superintendent of Schools pursuant to Education Code Section 39656...." (see fn. 5, *ante*), in that its prefatory language states that it allows delegation to the superintendent of "the power to contract" "[w]herever in this code [such power] is invested in the governing board of the school district." As mentioned earlier, the trial court accepted the applicability of section 39656 to teachers' resignations in general, and based on its construction of that provision held that district policy 5720 was invalid in transferring the power of acceptance of resignations to the superintendent.

There is no dispute between the parties that the tender and acceptance of an employee's offer of resignation is a matter of contract, and the trial court properly so concluded as a matter of law. (*Leithliter* v. *Board of Trustees* (1970) 12 Cal.App.3d 1095, 1099 [91 Cal.Rptr. 215]; *Sherman* v. *Board of Trustees* (1935) 9 Cal.App.2d 262 [49 P.2d 350].) ■ Despite, however, the above quoted language from section 39656, the entire content of the subsequent wording of that provision relates to the liability of the Board and that of its delegatee in relation to the latter contracting with a third party with regard to school property and equipment.

Section 39656 appears in title 2, division 3, part 23, chapter 4 of the Education Code. Part 23 is entitled "School Facilities," chapter 4 is entitled "Property Maintenance and Control." This chapter is concerned solely with purchase, sale, and maintenance of land or equipment for school use. Moreover, the only reference to certificated employees in

---

[6]The contractual nature of the legal relationship between an individual teacher and a school district governing board has long been recognized by the Supreme Court. The *Fry* court stated that "[t]he rules and regulations of the Board, and the resolutions of the Board fixing the status of teachers, are integral parts of that contract. The contract is contained in the statutes, the rules...regulations...and the resolutions of the Board." (*Id.*)

this chapter is found in section 39650, which is inapplicable to the instant case. Section 39650 provides for the hiring of certificated employees during vacations or days in which they are performing other services for the district, "to repair or build apparatus or equipment related to their duties as certificated employees...."

California courts have consistently applied section 39656, and its predecessor—section 15961, to fact situations relating to the purchase or sale of school equipment or property, or services thereof.[7] (See *Santa Monica Unified Sch. Dist.* v. *Persh* (1970) 5 Cal.App.3d 945 [85 Cal.Rptr. 463]; *Osborne* v. *Huntington Beach etc. School Dist.* (1970) 5 Cal.App.3d 510 [85 Cal.Rptr. 793].)

The language of the provision quoted by the Board—"[w]herever in this code..."—is seemingly juxtaposed to the chapter heading (Property Maintenance and Control) and the section heading (Delegation of powers to agents: Liability of agents) insofar as a resignation of a teacher has nothing to do with maintenance and control of school property, nor does it involve the concept of liability of the delegatee (as for instance with regard to monies spent for property or equipment). It is an established principle of statutory construction that a specific provision is to be construed with reference to the entire statutory scheme of which it is a part. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].) The rationale of this rule is to insure that the various elements of the overall scheme are construed in harmony. Therefore, the main import of the rule is to insure that the policy sought to be implemented is respected (*People* v. *Navarro* (1972) 7 Cal.3d 248 [102 Cal.Rptr. 137, 497 P.2d 481]), "and to this end,...chapter and section headings [of an act] may properly be considered in determining legislative intent" (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]), and are entitled to considerable weight. (*Gonzales* v. *Superior Court* (1935) 3 Cal.2d 260 [44 P.2d 320].)

---

[7]This interpretation is inferentially stated by the Supreme Court's holding in *California Sch. Employees Assn.* v. *Personnel Commission, supra,* 3 Cal.3d 139, 145, wherein the court held that the "Education Code does not expressly authorize a district's governing board to delegate to subordinates the power to suspend, demote or dismiss employees." At the time *California School Employees Assn.* was decided, Education Code section 15961 was in effect and contained the same relevant language under discussion herein. Therefore, the above quoted statement by the court supports the conclusion that section 39656 is inapplicable to employer-employee contractual relationships in general.

■ In the above context the policy sought to be implemented by section 39656 denotes its inapplicability to the case at bench. As this court stated in *Santa Monica Unified Sch. Dist.* v. *Persh, supra*, 5 Cal.App.3d 945, at page 953: "If [section 15961] demonstrate[s] anything, [it] demonstrate[s] a legislative intention that such major decisions of school boards as the purchase of school sites should be open and subject to public scrutiny."

While this policy may have some relevancy to the hiring of employees, in its attempt to monitor and insure fair use of school funds, it clearly is inapplicable to the acceptance of an employee's resignation.

## II

■ District Policy 5720 is a valid delegation of the Board's duty to accept employee resignations—mandated by Education Code section 44930—in that the functions delegated therein are wholly ministerial.

The real issue before us, however, still remains the validity of district policy 5720 in its delegating to the superintendent the official authority to accept resignations. Having found no express statutory authorization for delegation of the duties and powers conferred upon the Board by section 44930, policy 5720's validity depends upon whether it delegated to the superintendent a discretionary or ministerial function. We find district policy 5720 valid in that the authority delegated to the superintendent therein was entirely ministerial. (*California Sch. Employees Assn.* v. *Personnel Commission, supra*, 3 Cal.3d 139, 144.)

Respondent argues that the wording of section 44930 of the Education Code "clearly indicates that only the Board is authorized to accept an employee's resignation." We agree, and it did so through the receipt by the superintendent. We also agree with respondent that a resignation is an offer which can be rescinded prior to its acceptance.[8] (*Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198, 206 [149 Cal.Rptr. 1, 583 P.2d 744]; *Shade* v. *Board of Trustees* (1937) 21 Cal.App.2d 725, 727-728 [70 P.2d 490].)

---

[8]We need not consider whether a resignation made effective at some future date is a final declaration of resignation or an "offer" subject to withdrawal. A resignation of a teacher, however, is contractual in nature and the normal rules of the law of contracts prevail except insofar as they may be superseded by the specific provisions of Education Code section 44930.

The language of section 44930 of the Education Code, in describing the act of acceptance, states that the Board "shall accept the resignation of any employee...." Education Code section 75 states that the term "shall" as used in this code is "mandatory." The language in the statute is clear. *It requires acceptance* of employee resignations by the Board, but it does not prescribe the manner in which this acceptance is to be exercised.[9] While it is true that the procedure for acceptance is itself discretionary, in the instant case the Board has exercised its discretion in clearly establishing the procedure by which it will accept resignations. This procedure has been enacted in policy 5720 which authorizes the superintendent of schools to "officially accept the resignation of any employee." If 5720 had gone no further, it is arguable that this would constitute an improper delegation in that it would leave the decision as to when acceptance takes place to the discretion of the superintendent. Policy 5720 does go further—it fixes the "time of receipt by the Superintendent" as that point at which the "resignation shall be effective." Policy 5720 merely describes the procedure and sets the effective time of acceptance for the handing in of resignations. The actions of the superintendent in this respect are wholly ministerial.[10]

---

[9] The Supreme Court in *Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22 [132 Cal.Rptr. 668, 553 P.2d 1140], has made clear this distinction. Therein the court was faced with deciding whether a Government Code section dealing with the power to determine salaries in a general law city had placed that power exclusively in the city council, thereby precluding delegation to an arbitrator. The statute read: "By resolution or ordinance, the city council shall fix the compensation of all appointive officers and employees." (Gov. Code, § 36506.) The court held the power to fix compensation under this statute to be nondelegable because ultimately it is "legislative in character," thereby "invoking the discretion of the council."

Unlike section 44930's mandate to accept resignations, the statute in *Bagley* prescribed the exact manner in which the duty to fix compensation was to be executed—"by ordinance or resolution"—thus by definition excluding delegation to an arbitrator. (*Id.* at pp. 24-25.)

The *Bagley* court noted with regard to the fixing of compensation that "[a]lthough standards might be established...and the city council might delegate functions relating to the application of those standards, the ultimate act of applying the standards...is legislative in character [and therefore discretionary and nondelegable]." (*Id.* at p. 25.) The same is not true, however, with regard to establishing a time at which a resignation is deemed to have been accepted. The latter does not involve the application of a standard, but only the ministerial act of receiving and recognizing the resignation; as noted, the Board has no alternative to "accepting" the resignation, for to hold otherwise would recognize involuntary servitude.

[10] It is not surprising that the official act of acceptance is reposed in the superintendent of the school district, in that he is the "chief executive officer of the governing board...." (See Ed. Code, § 35035—*Additional powers and duties of superintendent.*) He is the one who must know how many teachers and for what courses are active employees and to at least recommend the filling of existing and anticipated vacancies.

There is a second aspect to section 44930, not in issue in this case. Following the language mandating the acceptance of resignations, the statute states that the Board shall also "fix the time when the resignation takes effect,..." This subsequent duty applies to the act of finalizing the pay period of employment, in this case December 31, 1977, and is clearly discretionary in nature. Policy 5720, however, does not purport to delegate this function to the superintendent, and would be invalid to the extent it did.[11] Any assumption of this function by the superintendent here was ineffective and, interestingly enough, not rubber stamped by the Board.

### III

Knowlton's attempt to rescind his offer of resignation was ineffectual, coming after its official acceptance upon receipt by the superintendent.

The Supreme Court, in *Armistead v. State Personnel Board* (1978) 22 Cal.3d 198 [149 Cal.Rptr. 1, 583 P.2d 744], established a tripartite test to ascertain a public employee's right to withdraw a resignation.[12] ■ The court held that "unless valid enactments provide

---

[11]Policy 5720 states that the "resignation shall be effective" upon receipt by the superintendent. This reference is to the effective date of acceptance of the offer of resignation, and by its very wording is not a delegation of discretion.

The reference in the second part of section 44930 "and [the Board] shall fix the time when the resignation [itself] takes effect" refers to the Board's discretion in setting the date for termination of employment. This latter power is discretionary and cannot fall within policy 5720's authorization of the superintendent to accept resignations. Although the superintendent purportedly set this date through January 1, 1978, in his response memorandum of October 18, this wording was of no legal effect at that time.

Moreover, the Board only has the power to set the final date of termination of employment when the employee himself has not done so at the time of resignation. (See 7 Ops. Cal.Atty.Gen. 148, 150 (1946).) Where resignations are conditional, the Board is bound by the normal rules of contract and must accept the effective date of resignation as fixed by the employee. At that point the term can only be changed by mutual agreement of the parties.

Herein, Mr. Knowlton did not fix a date on which his resignation would be effective. His statement in his offer of resignation—"I hereby resign my job...this date Oct. 18, 1977"—is merely a reference to the date the offer was being tendered. Therefore, the Board, at its October 25 meeting, validly determined the date of effect to be December 31, 1977.

[12]We particularly note the last paragraph of footnote 1 on page 201 and recognize that despite the court's inquiry it accepted the premise of the parties and the trial court that Armistead's memorandum was an offer. Our case is patently different. Knowlton presented an *absolute declaration of resignation*, not an *offer* by any possible construction.

otherwise, an employee is entitled to withdraw a resignation if she or he does so (1) *before its effective date* [as set by the employee], (2) *before it has been accepted*, and (3) before the appointing power acts in reliance on the resignation." (*Id.* at p. 206. Italics added.)

While in the instant case the effective date of resignation (termination of salary payment) was not set until the October 25 Board meeting, and while there is no evidence in the record to show that the Board acted in reliance upon the resignation, it is clear that pursuant to district policy 5720 the effective date of *acceptance of the resignation was October 18, the date of receipt by the superintendent* and the effective date as set by the employee.

Respondent's contention that *Armistead* stands for the proposition that a public employee has the right to withdraw his resignation, even after acceptance, so long as the employer has not been prejudiced, is simply in error. The language of the holding in *Armistead* unequivocally establishes that the test is to be read so as to make withdrawal ineffectual if any one of the three events has occurred. Therefore, Knowlton's October 24th attempt to rescind his resignation came six days after the effective date set by him and the effective acceptance; it was a nullity. The only thing left for the Board to do was to set the date the resignation was to effect salary termination, and this they did on October 25.

As we stated in *Leithliter* v. *Board of Trustees, supra,* 12 Cal.App.3d 1095, 1099, in reference to Education Code section 13401 (the predecessor to § 44930, which uses the exact language of the former provision), "[r]esignations of employees are specifically provided for in [section 44930] which, we presume, means precisely what it says. Resignations are contractual in nature. [Citation.] [Respondent] offered to terminate [his] employment with the...district and [his] offer was accepted. Obviously [he derives] certain advantages from this transaction, such as the privilege to seek and accept employment elsewhere without violating [his] contract with [the Board]."

█ Pursuant to its obligation to accept resignations as mandated by Education Code section 44930, the Board promulgated district policy 5720 establishing the procedure for acceptance of resignations and the point in time at which acceptance would be deemed effective. The superintendent, as the person designated to receive resignations, rightfully performed his duty on October 18. This act was entirely

ministerial. The delegation of authority to receive the resignation was consonant with the law and so was the effective date of acceptance.

The judgment is reversed.

Kaus, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied July 15, 1980, and respondents' petition for a hearing by the Supreme Court was denied September 10, 1980. Bird, C. J., was of the opinion that the petition should be granted.