*1079 HULL, J., Concurring and Dissenting.
I concur in the court’s holding that the industry advisory issued by the Department of Alcoholic Beverage Control (the Department) on December 23, 2011, in anticipation of the January 1, 2012 effective date of the 2011 amendment to Business and Professions Code section 23394.7 (hereafter the Advisory), is subject to the rulemaking provisions of the Administrative Procedure Act (the APA) (Gov. Code, § 11340 et seq.) and that we must declare the Advisory invalid due to the failure of the Department to comply with the provisions of that act. (Unspecified section references that follow are to the Bus. & Prof. Code.)
As to that portion of the lead opinion that finds that this court nonetheless may uphold the Advisory because we need not defer to the Department’s interpretation of the statute and because “the interpretation of section 23394.7 is well within the court’s competence” (lead opn., ante, at p. 1068), I dissent.
In 2011, the Legislature enacted section 23394.7 which provides: “No privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee’s physical premises.” (Stats. 2011, ch. 726, § 2.)
Section 23394.7 is intended to (1) avoid facilitation of the purchase of alcoholic beverages to minors, (2) prevent customers who are intoxicated from purchasing more alcohol, and (3) prevent the theft of alcoholic beverages. (Stats. 2011, ch. 726, § 1.)
On December 23, 2011, the Department issued the Advisory relating to section 23394.7: “Self-Service Checkouts.”
The Advisory read in relevant part:
“The purposes behind this law include preventing minors from purchasing alcoholic beverages, denying obviously-intoxicated patrons from buying alcoholic beverages, and preventing theft of alcoholic beverages, by ensuring that alcoholic beverages are sold only in circumstances in which substantial interaction between the purchaser and the sales clerk occurs.
“It is clear that a ‘customer-operated checkout stand’ means a checkout stand or station that is designated for operation by the customer. Such checkout stands are commonly referred to as ‘self serve’ or ‘self service’ checkout stands. While retailers do monitor these customer-operated checkout stands and provide assistance to the customer as necessary to conclude any given transaction, including the purchase of alcoholic beverages, such monitoring or oversight does not satisfy the language and intent of the statute. Accordingly, no alcoholic beverages may be sold through any checkout stand *1080 that is enabled to allow operation by the customer at the time the customer’s check-out transaction commences or at any point during the check-out process.”
Petitioner brings these petitions challenging that interpretation of the statute.
We must first decide whether the Advisory is a regulation subject to the requirements of the APA. The lead opinion concludes that it is and I agree.
A “regulation” within the meaning of the APA is a “rule, regulation, order, or standard of general application . . . adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.” (Gov. Code, § 11342.600.)
“ ‘A regulation subject to the APA ... has two principal identifying characteristics. [Citation.] First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must “implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency’s] procedure.” [Citation.]’ ” (Morning Star Co. v. State Bd. of Equalization (2006) 38 Cal.4th 324, 333-334 [42 Cal.Rptr.3d 47, 132 P.3d 249] (Morning Star), quoting Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 571 [59 Cal.Rptr.2d 186, 927 P.2d 296] (Tidewater).)
It is apparent the Advisory establishes a rule the Department intends to apply generally, declaring, as it does, that the rule applies to all “off-sale licensed premises.”
It is equally clear that the Advisory establishes a rule that implements and interprets section 23394.7 in that the statute does not define a “customer-operated checkout stand,” but the Advisory does. The Advisory declares the statute must be interpreted and implemented to refer to any checkout stand “that is enabled to allow operation by the customer at the time the customer’s check-out transaction commences or at any point during the check-out process.” The Advisory also declares that, notwithstanding the statutorily undefined term “customer-operated checkout stand,” those checkout stands operated by retailers that monitor and provide assistance to the customer as necessary to conclude any given transaction, including the purchase of alcoholic beverages, do not “satisfy the language and intent of the statute.” A clearer example of an agency’s interpretation of the legislative intent behind a statute and an agency’s determination of the manner in which that intent can *1081 be implemented is difficult to imagine. Thus, the Department was required to comply with the provisions of the APA and, having failed to do so, we must declare the Advisory invalid.
The Department attempts to save the rule by invoking that portion of the law that allows a proposed rule to stand even after a violation of the APA if the rule can be said to be the only “legally tenable” reading of the statute. (Gov. Code, §11340.9, subd. (f).)
Government Code section 11340.9, subdivision (f) of the APA provides that the provisions of the APA do not apply if a regulation embodies “the only legally tenable interpretation of a provision of law.”
“To evaluate this argument, we consider, as with conventional statutory interpretation, the language and the purpose of the relevant statutes in order to discern the Legislature’s intent. [Citation.] That said, whether the [agency] has adopted the sole ‘legally tenable’ reading of the statute[] represents a different question than whether its interpretation is ultimately correct. As the APA establishes the ‘interpretations’ typically constitute regulations, it cannot be the case that any construction, if ultimately deemed meritorious after a close and searching review of the applicable statutes, falls within the exception provided for the sole ‘legally tenable’ understanding of the law. Were this the case, the exception would swallow the rule. Rather, the exception for the lone ‘legally tenable’ reading of the law applies only in situations where the law ‘can reasonably be read only one way’ [citation], such that the agency’s actions or decisions in applying the law are essentially rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute’s plain language. [Citations.]” (Morning Star, supra, 38 Cal.4th at pp. 336-337.)
The question is not whether the Department has adopted an interpretation of the statute that is consistent with the law, but whether that interpretation is the only “ ‘legally tenable’ ” one, that is, whether its interpretation “follows directly and inescapably from the pertinent provisions of law.” (Morning Star, supra 38 Cal.4th at p. 340.)
The Department, through its Advisory, has concluded that prohibiting the sale of alcohol at a “customer-operated checkout stand” as that phrase is used in the statute, means that alcohol may not be sold at a checkout stand “that is enabled to allow operation by the customer at the time the customer’s check-out transaction commences or at any point in the check-out process.” The Department has concluded that monitoring and oversight of the sale of alcohol at such sites does not satisfy the intent of the statute. But, in my view, that interpretation of the law does not follow “directly and inescapably” from the language of the statute. (Morning Star, supra, 38 Cal.4th at p. 340.)
*1082 The parties have contrary views regarding the proper interpretation of the statutory language and, ultimately, the legislative intent underlying its provisions. Both the petitioner and the Department rely on the legislative history of section 23394.7 to argue that its interpretation of the statute is the correct one. On the one hand, the Department argues, for example, that the legislative history proves without question that its interpretation of the statute is the correct one relying in part on language in the third reading in the Assembly of Assembly Bill No. 183 (2011-2012 Reg. Sess.) (Assembly Bill 183) which said the bill represented a “precautionary step and precludes the possibility of underage drinking abuses occurring due to the use of a self-service checkout kiosk, the passive supervision associated with these stations makes them vulnerable to manipulation [,yzc].” (Assem. Off. of Research, 3d reading analysis of Assem. Bill 183, p. 2.) That same report went on to say that the Legislature intended to force alcohol purchases to be conducted through a “face-to face transaction from beginning to end.” (Ibid.)
Petitioner, on the other hand, argues that amendments to the bill show that the Legislature did not intend to preclude the sale of alcohol occurring at a kiosk monitored and controlled by a store employee. They point out that the bill as originally drafted provided that;
“SEC 2. Section 23394.7 is added to the Business and Professions Code, to read:
“. . . (a) No privileges under an off-sale license shall be exercised by the licensee at any checkstand, where the customer is able to scan and purchase alcoholic beverages using a point-of-sale system with limited or no assistance from an employee of the licensee. •
“(b) For purposes of this section, ‘point-of-sale’ system means any computer or electronic system used by a retail establishment such as, but not limited to, Universal Product Code scanners, price lookup codes, or an electronic price lookup system as a means for determining the price of the item being purchased by a consumer.” (Assem. Bill 183, as introduced Jan. 25, 2011.)
The bill was thereafter amended to read simply: “No privileges under an off-sale license shall be exercised by the licensee at any . . . customer-operated checkout stand.” (Assem. Amend, to Assem. Bill 183, May 19, 2011.)
Petitioner argues that this amendment demonstrates “the original version of the legislation contained language that more specifically defined the sales practices to be prohibited. For example, the law would have clearly prohibited retailers from selling alcohol at checkout stands where customers themselves scanned products for checkout ‘with limited or no assistance’ from a *1083 store employee. ... By replacing the language with the general phrase ‘ customer-operated checkout stand’ the Legislature made the prohibition less stringent, so that retailers can comply with the law by selling alcohol through employee-assisted face-to-face transactions, even at checkout stands with the self-scan technology.”
Petitioner also points out that the Legislature specifically did not define what it meant by a sale of alcohol at a “customer-operated checkout stand” when “[i]f the Legislature truly intended [section 23394.7] to mean what [the Department] now interprets] it to mean, it easily could have included in the statute, for example, the language contained in [the Advisory].” It did not, of course, arguably leaving to the Department the determination of the regulations that would be necessary to satisfy the goals of the statute.
The ultimate issue is what the Legislature meant by the phrase “customer-operated checkout stand.”
Petitioner argues, in part, that “until the customer pays for and receives the alcoholic beverage, the retailer has not exercised any relevant privilege” of conducting an off-sale transaction under its license. This, petitioner argues, along with a retailer’s measures to ensure that an employee is present to monitor or oversee the actual sale of an alcoholic beverage, halting the transaction when the item scanned at the checkout stand is alcohol and not allowing the transaction to proceed until the purchaser’s age, state of sobriety, and intention to pay for the alcohol is determined by a store clerk, satisfies the goals of the statute. At oral argument, petitioner noted that a self-controlled checkout stand which is controlled by the customer when the customer is buying, for instance, bread or butter or beans is no longer a “self-controlled” checkout stand when a checkout stand automatically stops a transaction that cannot continue absent a store employee’s electronic permission to do so. The place of purchase and the transaction has, at that point, become store controlled for purposes of the sale of alcohol.
Put slightly differently, petitioner argues that the only transaction, for our purposes here, whereby retailers exercise the “privileges under an off-sale license” within the meaning of section 23394.7 and over which the Department has any authority, is the privilege of selling alcohol and that, if the sale of alcohol is under the supervision and control of a store employee at the time of the purchase of the alcohol, just as it would be if the customer had used a traditional, nonautomated checkout lane operated by a store clerk, this privilege is not being exercised at a “customer-operated” checkout stand within the meaning of the statute.
We are not here required to determine whether petitioner’s reading of the statute is the correct one. It may or it may not be. But the question at this *1084 juncture is whether petitioner’s reading of the statute is “palpably unreasonable.” (Morning Star, supra, 38 Cal.4th at 338.) I think that it is not.
If called upon to do so, a court will eventually decide which party’s view of the legislative intent behind the statute is the correct one, but, again, that is not the question before us now. The question is whether the Department’s interpretation of the statute is the only “legally tenable” reading of the statute. While petitioner’s arguments may ultimately prove to be wrong, their interpretation of the statute is not “palpably unreasonable.”
I part company with the lead opinion when it concludes that the court “need not defer to the Department’s interpretation because the interpretation of section 23394.7 is well within the court’s competence.” (Lead opn., ante, at p. 1068.) Under some circumstances, a court may interpret and apply statutory language in the first instance without deferring to an agency’s interpretation. (See Tidewater, supra, 14 Cal.4th 557; Capen v. Shewry (2007) 155 Cal.App.4th 378 [65 Cal.Rptr.3d 890].) But, as explained in Morning Star, that is the appropriate course only where an invalid regulation promulgated by an agency is a “simple interpretive policy” and where the court is in “as good a position as [the agency], or almost so, to interpret the underlying [rule].” (Morning Star, supra, 38 Cal.4th at pp. 340-341.) But where the statutory scheme calls for the application of administrative expertise, the matter should be returned to the agency for its interpretation of the statute in the first instance. (Id. at p. 341.)
In my view, the latter course is the proper course under the circumstances presently before us. It should be left to the Department, in proceedings that conform to the requirements of the APA, initially to determine the proper regulations necessary to carry forward the intent of the Legislature when it enacted section 23394.7. Whether, for instance, as petitioner suggests, the intent of the statute can be satisfied with a procedure whereby the retailer, when an otherwise self-controlled checkout stand halts the “self-controlled” aspect of the process and gives full control of the purchase of alcohol only to the retailer by checking a buyer’s identification and entering age information into the system before the transaction is allowed to go forward, or whether, as the Department suggested at oral argument, such a system could be manipulated in a way that would frustrate the intent of the statute, is one example of a matter best left initially to agency expertise with full input from those persons whom the regulations will affect. This court is not in as good a position, or almost so, to make those determinations. “To transfer to the courts what are properly agency responsibilities as to these and similar matters would frustrate the intent of the Legislature in enacting the APA.” (Morning Star, supra, 38 Cal.4th at p. 341.)
*1085 “One purpose of the APA is to ensure that those persons or entities whom a regulation will affect have a voice in its creation (Armistead v. State Personnel Board (1978) 22 Cal.3d 198, 204-205 [149 Cal.Rptr. 1, 583 P.2d 744] . . .), as well as notice of the law’s requirements so that they can conform their conduct accordingly (Ligon v. State Personnel Bd. (1981) 123 Cal.App.3d 583, 588 [176 Cal.Rptr. 717] . . .). The Legislature wisely perceived that the party subject to regulation is often in the best position, and has the greatest incentive, to inform the agency about possible unintended consequences of a proposed regulation. Moreover, public participation in the regulatory process directs the attention of agency policymakers to the public they serve, thus providing some security against bureaucratic tyranny. (See San Diego Nursery Co. v. Agricultural Labor Relations Bd. (1979) 100 Cal.App.3d 128, 142-143 [160 Cal.Rptr. 822].)” (Tidewater, supra, 14 Cal.4th at pp. 568-569.)
I would declare the Advisory invalid, order that our stay order remain in effect pending action by the Department consistent with the APA and return the matter to the Department for its further consideration under the provisions of the APA.