[Civ. No. 49048. Second Dist., Div. Five. June 2, 1977.]

PROFESSIONAL ENGINEERS IN CALIFORNIA GOVERNMENT, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
CALIFORNIA LEAGUE OF ENGINEERING AND ALLIED TECHNICAL EMPLOYEES, Intervener and Appellant.

COUNSEL

Blease, Vanderlaan & Rothschild and Jay-Allen Eisen for Intervener and Appellant.

Lemaire, Faunce & Katsnelson and Edward L. Faunce for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

KAUS, P. J.—This dispute involves a decision by respondent California State Personnel Board to merge a professional engineering job class and a nonprofessional or technician job class into one class comprising both groups. The *Professional Engineers In California Government* (PEICG) filed a petition for writ of mandate to compel the board to set aside its decision combining the classes. The trial court ruled in favor of petitioners. The California League of Engineering and Allied Technical Employees (CLEATE), appellant here, was then allowed to intervene in support of respondent board. The trial court entered a judgment in favor of petitioners in accordance with its original decision. The board has not appealed the trial court's judgment.

FACTS

Until about February 1975, the State Personnel Board had separate job classifications for Associate Transportation Engineers (ATE) who were required to be registered as engineers, and Highway Engineering Associates (HEA) who were not. Starting in 1972, the Department of Public Works—now the Department of Transportation—recommended that the State Personnel Board combine the classes of ATE and HEA, by merging the HEA class, with appropriate modifications, into the ATE class.

In December 1974, the Department of Transportation, after a further study, renewed the recommendation that the classes be merged. After a public hearing the board adopted the proposal in March 1975. A new ATE class was created which merged the two former classes and

eliminated the requirement of registration as an engineer from the ATE class.

The former ATE class had been defined as follows: "Under direction, to have charge of a wide variety of difficult and complex transportation engineering work; or to direct the activities of various engineering and technical staffs; and to do other work as required."

The new—combined—ATE class description defined the job as follows: "Under direction *of a registered engineer,* to have charge of *or perform* a wide variety of difficult and complex transportation engineering work; . . . and to do other work as required."

The ATE specification also describes, in some 27 lines of type, "typical tasks," for the class. Of particular relevance is the task of "resident engineer." The former ATE class description provided that the ATE "serves as resident engineer on construction projects and assigns work, gives instructions and passes upon difficult engineering and administrative problems in connection with directing the work; . . ."

The new ATE class specification qualified that description: "*Under direction,* serves as resident engineer. . . ."

In an informal opinion, the trial court found: the job description for ATE included the task of "resident engineer"; this person was in charge of the job and therefore had to be registered; departmental policy also required a resident engineer to be registered. The court concluded that the combination into one class of registered and unregistered persons violated government code provisions which require that a personnel class be comprised of positions requiring substantially the same minimum qualifications.

We conclude that the trial court erred. The court was required to uphold the board's decision if there was any substantial evidence to support that decision. (E.g., *Kristal* v. *State Personnel Bd.* (1975) 50 Cal.App.3d 230, 236 [123 Cal.Rptr. 512].) This the trial court did not do.

## Discussion

This case involves both the licensing provisions for engineers and the classification provisions for government employees.

 The Business and Professions Code provides that all professional engineers be registered according to their skills, in this case, as civil engineers. (Bus. & Prof. Code, §§ 6701, 6730.) A professional engineer is a person "engaged in professional practice of rendering service or creative work requiring education, training and experience in engineering sciences. . . ." (§ 6701.) A civil engineer is any one who "practices or offers to practice" civil engineering. (§ 6702.) A person "practices civil engineering when he . . . is in responsible charge of civil engineering work." (§ 6734.) These opaque definitions are somewhat clarified by the statutory definition of who is *not* an engineer.

"A subordinate is any person who assists a registered professional engineer in the practice of professional engineering without assuming responsible charge of work." (§ 6705.) A "subordinate" *to* a registered civil engineer "insofar as he acts solely in such capacity, is exempt from registration. . . ." (§ 6740.)

In short, the difference between an "engineer" who must be registered and a "subordinate" who need not be, is responsibility. Responsibility, and specifically the phrase "responsible charge of work" means "the independent control and direction, by the use of initiative, skill, and independent judgment, of the investigation or design of professional engineering work or the direct engineering control of such projects." (§ 6703.)[1]

Government Code section 18523 defines a class of state employees as "a group of positions sufficiently similar with respect to duties and responsibilities that the same title may reasonably and fairly be used . . . that substantially the same tests of fitness may be used and that substantially the same minimum qualifications may be required . . . ." Section 18801 requires that all positions in state civil service must be grouped in classes with substantially the same requirements.

We note at this point, first, that nothing in the Business and Professions Code prohibits a registered engineer from performing work

---

[1] The State Board of Registration for Professional Engineers has further defined the meaning of the term "responsible charge." (Cal. Admin. Code, tit. 16, § 404.1.) This section of the Administrative Code became effective on March 6, 1977. Without analyzing the section in detail, it is obviously designed to necessitate a high degree of personal involvement on the part of the engineer claimed to be in "responsible charge" of a project.

not requiring registration—an obvious matter; and, second, that nothing in the Government Code prevents classifying persons with unequal qualifications, provided those qualifications are not relevant to the job. Stated differently, and leaving aside other intricacies of the civil service system, the state could have a job class for "file clerks" which includes persons who can and persons who cannot type—provided always that typing forms no part of the job description. Similarly there would be no law or rule against registered nurses serving in a "vocational nurse" class, as long as they are not required to perform tasks for which a vocational nurse is not qualified.

We note further, that there are classes in the Department of Transportation composed exclusively of persons who are registered engineers, presumably qualified to handle any departmental project that requires a registered engineer.

As indicated by the trial court's opinion, the issue in this case boils down to this: Does the task of "resident engineer" require that the person performing the task be registered? If so, to include the task of "resident engineer" in the description of the new ATE class violates both the Government Code and the Business and Professions Code.[2]

There was substantial evidence at the State Personnel Board hearing that registered engineers in the old ATE class were · not performing work that required registration. Caltrans chief engineer, Robert Datel, said that none of the 350 former ATEs in his department, except the "bridge people"—not involved here—required registration. He distinguished between the desirability of registration "because typically, a registered person brings in a broader background," and the need for registration.

---

[2]Respondent PEICG analyzes the ATE class duties at length to demonstrate that such tasks fall within the definition of civil engineering in Business and Professions Code section 6731. Except for the issue raised by the resident engineer task we can summarily dispose of this contention. As discussed in the text, the Business and Professions Code makes clear that an unregistered person can perform engineering tasks as long as that person does so "without assuming responsible charge of work." (§ 6705.) Thus, an unregistered ATE can legally perform engineering tasks—for example, make "reconnaissance surveys over proposed routes for transportation facilities;"—provided the unregistered ATE is supervised by a registered engineer and exercises no "independent control and direction. . . ." (§ 6703.)

It appears that the trial court—and PEICG—relied chiefly on a policy and procedure memo from the director's office of the Department of Transportation dated January 20, 1975—that is, before the new ATE classification was approved. This memo states: "The Resident Engineer assigned responsible charge of a construction project consisting of engineering work or structures within the intent of the Act shall be registered." The memo further states that if the work was such "that the requirement for a registered engineer is uncertain or intermittent, the Resident Engineer in immediate charge may be nonregistered provided responsible charge is assigned to a registered engineer."

Even assuming that the January 1975 memo constitutes substantial evidence, the trial court could not, without improperly weighing the evidence, have relied on that memo and rejected the substantial evidence offered by the department that ATE's were in fact not performing work that required registration as an engineer. Further, even if the court had been entitled to weigh the evidence, the January memo was not, properly, independent evidence of the need that ATE's be registered. The January 1975 memo was written before the new classification was adopted; at that time, the board distinguished between ATE's and HEA's, and the department memo does no more than reflect the classifications as they then existed. In other words, the department memo did not purport to create a job need, but rather to instruct department personnel how existing classes of workers would be used: Since a class of registered ATE's existed, "resident engineers" could work with substantial autonomy and therefore had to be registered.

That the department's memo purported only to reflect job classes as they existed is shown by a letter issued by the Department of Transportation in May 1975—after the board had adopted the new combined class and before this writ petition was filed—which letter specifically superseded the January 1975 memo. The May 1975 memo provides that resident engineers holding ATE classifications "shall be responsible to, and shall work under appropriate direction of, persons holding civil service classifications which require registration as civil engineers."

Although the May 1975 memorandum is clearly intended to avoid any conflict between the job description of the new ATE class and the Business and Professions Code, petitioners claim that conflict is inevita-

ble because the position of a resident engineer necessarily requires registration under the Business and Professions Code. Their argument is wholly semantic and ignores the administrative record.

The proceedings before the personnel board show that the Department of Transportation has always been very sensitive to the possibility that a department employee, assigned to a particular project, might in fact be required to perform tasks for which registration would be required under the Business and Professions Code. Mr. Robert Best, the Chief Deputy Director of the Department of Transportation, testified before the personnel board that where questions of the necessity of registration had arisen in the past, the department had worked with the Board of Registration for Professional Engineers, that an internal review policy had been established and that if it was determined that a job required a registered engineer "we would either shift the responsibility to a registered individual or we would make some other provision in terms of changing the classification as appropriate to meet the requirements." The department was aware that under the new classification, marginal situations calling for the exercise of judgment would arise: "And it will always be a judgment call no matter how the specifications are written. We have developed an understanding as to ... those cases where we make our judgment call and somebody disagrees with us. To exercise our responsibility fully we have set up a procedure where we will immediately review our judgment call and if necessary the issue of assignment of an individual whether he be an Assistant or Associate or what would be taken all the way up to the Chief Engineer of the Department to make a decision on the assignment on that individual if anybody disagrees with the judgment call of lower level engineering management."

Further, the record indicates that pursuant to section 18714 of the Government Code, a grievance procedure is established, presumably available to any registered engineer holding an ATE classification who feels that he is being assigned to a project "out of his league," so to speak.

In short, the department has demonstrated a great deal of sensitivity to the problem of correlating its job classifications and individual assignments of employees to various projects, to the strictures of the Business and Professions Code by establishing both informal and formal procedures for adjusting differences of opinion.

The fallacy of this litigation is the assumption that particularized resolutions of marginal cases is impossible and that, therefore, the new ATE class which combines registered and unregistered engineering personnel, necessarily violates either section 18801 of the Government Code by combining two different categories into one job class, or sections 6701, 6702 or 6734 of the Business and Professions Code, by authorizing the use of unregistered persons to perform work requiring registration. On the record before us we see no reason for sharing petitioners' pessimism.

The judgment is reversed.

Stephens, J., and Hastings, J., concurred.

A petition for a rehearing was denied June 28, 1977, and the petition of the plaintiff and respondent for a hearing by the Supreme Court was denied August 11, 1977.