[No. B008832. Second Dist., Div. Two. Oct. 28, 1985.]

MICHAEL J. CARDEN, Plaintiff and Appellant, v.
BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS,
Defendant and Respondent.

COUNSEL

Karns & Karabian and Lawrence Graze for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, and Anne L. Mendoza, Deputy Attorney General, for Defendant and Respondent.

OPINION

GATES, J.—Michael J. Carden appeals from the judgment denying his petition for a peremptory writ of mandate. He contends: "I. The court erred in allowing respondent Board of Registration for Professional Engineers to apply a lengthy apprenticeship period in addition to the nine years of engineering work experience established by statute. II. Respondent had no authority to enlarge the requirements for registration as a fire protection engineer set forth in Business and Professions Code section 6767 and Bulletin 3-75. [III.] The court erred in awarding only half credit to Michael Carden for engagement Nos. 1, 2 and 3 because of administrative work disqualification. [IV.] The Board of Registration for Professional Engineers was re-

quired to issue a statement of its findings of fact regarding its denial of Michael Carden's application for licensure as a fire protection engineer."

The Professional Engineers' Act (Bus. & Prof. Code, § 6700 et seq.) specifies that "[t]he board [Board of Registration for Professional Engineers] may, by regulation, define the scope of each branch of professional engineering other than civil engineering for which registration is provided under this chapter." (§ 6717.)[1]

Generally an applicant for registration as a professional engineer must "... furnish evidence of six years or more of experience in engineering work satisfactory to the board evidencing that applicant is competent to practice the character of engineering in the branch for which he is applying for registration, and successfully pass [an] examination." (§ 6751.) However, in 1974 the Legislature added section 6767 to the Act empowering the board to "(a) ... register an applicant without examination in any engineering discipline which the board has established pursuant to Section 6700 if the applicant, in the opinion of the board, has all the qualifications for such registration, and if the applicant complies with all the following: [¶] (1) Furnishes evidence of nine years or more of experience in engineering work *satisfactory to the board* evidencing that the applicant is competent to practice the character of engineering in the branch for which he is applying for registration." (Italics added.)[2]

Acting upon the authority granted it by the Legislature, the board in 1975 adopted a regulation providing: "An applicant for registration in a branch or specialty branch established by the board may be registered without examination if the applicant meets all of the requirements of the code and provides evidence of nine years or more of qualifying experience *acceptable to the board* as follows: ... [¶] (d) Fire Protection Engineers [¶] (1) Experience required for registration as a fire protection engineer is experience in fire protection engineering work at a level satisfactory to the board evi-

---

[1] "'Professional engineer,' within the meaning and intent of this act, refers to a person engaged in the professional practice of rendering service or creative work requiring education, training and experience in engineering sciences and the application of special knowledge of the mathematical, physical and engineering sciences in such professional or creative work as consultation, investigation, evaluation, planning or design of public or private utilities, structures, machines, processes, circuits, buildings, equipment or projects, and supervision of construction for the purpose of securing compliance with specifications and design for any such work." (Bus. & Prof. Code, § 6701.)

[2] Section 6767 also required the board to establish a final filing date for applications "no later than three years following the adoption of regulations by the board establishing each such discipline." (Subd. (b).) It further specified the board "may adopt such regulations under provisions of the Administrative Procedure Act as are necessary to implement this section." (Subd. (c).)

dencing that the applicant is qualified. . . . [¶] (3) Applications submitted pursuant to this regulation will be considered only for registration without examination, and must be filed with the board prior to January 1, 1977. . . ." (Italics added.) (Cal. Admin. Code, tit. 16, § 466, repealed Aug. 10, 1983, Cal. Admin. Register 83, No. 33.)

The board defined the term "fire protection engineering" as "that branch of professional engineering which requires such education and experience as is necessary to understand the engineering problems relating to the safeguarding of life and property from fire and fire-related hazards; and requires the ability to apply this knowledge to the identification, evaluation, correction, or prevention of present or potential fire and fire related panic hazards in buildings, groups of buildings, or communities, and to recommend the arrangement and use of fire resistant building materials and fire detection and extinguishing systems, devices, and apparatus in order to protect life and property. . . ." (Cal. Admin. Code, tit. 16, § 404, subd. (n).)

It has described qualifying experience for registration as a professional engineer to be "that experience *satisfactory to the Board* which has been gained while performing engineering tasks *on a full-time basis* under the direction of a professional engineer." (Cal. Admin. Code, tit. 16, § 424, subd. (c), italics added.)

The board made available to applicants seeking registration as professional engineers without the necessity of passing an examination Bulletin 3-75 setting forth certain general requirements for such registration. This bulletin also stated that the applicant "must furnish evidence of *nine years* of qualifying engineering work experience *acceptable to the Board* . . ." and pointed out that "[q]ualifying experience for professional engineering registration means full-time employment or activity. It does not include part-time or short-time employment, overtime, trainee or orientation programs, technician or sub-professional levels of employment except for consultation by a fully qualified engineer." (Italics added in part.) A second bulletin prepared by the board, Bulletin 75-4(b), described in detail the nature of fire protection engineering.

On December 21, 1976, appellant filed his application seeking registration as a fire protection engineer under section 6767 of the Business and Professions Code. His application revealed he had received a Bachelor of Science degree in Business Administration in 1962, but has no formal education in

engineering. In setting forth his experience record between the years 1958 and 1976 appellant specified 5 engagements totaling 15 years 2 months.[3] All the experience claimed by appellant was gained while he was employed at J.M. Carden Sprinkler Co., Inc., where he worked under his father's supervision until he replaced his father as president of the company in 1972.

Appellant was notified on June 8, 1977, that his application had been denied as a result of the board's determination that engagements 3 and 4, "are considered as apprenticeship period. It appears applicant has had involvement with sprinkler design, which is a narrow facet in the broad spectrum of fire protection engineering. Only partial credit allowed for engagements 1 and 2." In August 1977 appellant submitted additional information to respondent and requested a reevaluation of his application. On April 12, 1978, the board notified him it had "found no justification for change of its original findings."

Appellant thereafter exercised his statutory right to an administrative hearing (Bus. & Prof. Code, § 485; Gov. Code, § 11500 et seq.) which commenced in June 1982. Two issues emerged which are relevant to the present appeal, i.e., the degree to which the engineering experience claimed by appellant should be deemed nonqualifying either because it (1) was at a subprofessional or "apprenticeship" level, or (2) involved management and administrative duties unrelated to professional engineering.

There was a consensus among all of the witnesses testifying that a person with no formal education in engineering must serve an apprenticeship in order to perform on a professional level. Each of the professional engineers called to testify by appellant agreed that the length of time required to reach such proficiency is necessarily dependent on the individual and that some will never achieve it. However, for the most part each of these witnesses concluded he, personally, had been able to perform as a professional within two years of his entry into the field. Appellant also maintained he had ceased doing work at the "technician-level" after engagement 5.

Daniel Jacobsen, the fire protection engineer who had evaluated appellant's application in early 1977 was called as an expert by the board. He

---

[3]Appellant listed his experience as follows:

| Engagement | Dates | Total Months | Position |
|---|---|---|---|
| 1 | 1972-1976 | 46 | President |
| 2 | 1969-1972 | 36 | Vice President Operations |
| 3 | 1966-1969 | 38 | Contract & Design Officer |
| 4 | 1963-1966 | 34 | Fire Sprinkler Designer |
| 5 | 1958-1963 | 28 | Fire Sprinkler-Fitter Apprentice |

expressed the opinion "that there just is not sufficient creditable professional performance time to qualify [appellant] for registration without examination." He stated it was inconceivable "that any individual can reach a level of expertise in engineering in two years without some formal education in engineering" and concluded that by the time appellant had "finished engagements 3 and 4 he had reached that level of expertise where, at least to some extent, he was performing professional engineering functions."[4]

On the question of appellant's administrative obligations during engagements 1 and 2, appellant claimed that while serving as his company's vice president he had devoted only "[a]n hour a week, three hours every two and a half weeks, . . ." to administrative affairs and approximately 1 percent of his time to sales. According to appellant, his father and a business manager had assumed primary responsibility for these matters. He further asserted that even when he became president his administrative duties did not increase appreciably, since he then delegated "a great majority" of such labors to others. He also maintained he had strictly limited his involvement in the sales aspect of the business. However, other witnesses called by appellant himself testified that when they had functioned in similar roles, they devoted 40 to 60 percent of their time to administrative matters.

Based upon his own judgment and the written information appellant had submitted to the board, Jacobsen initially estimated appellant had dedicated one-fourth of his time to professional engineering activities during engagements 1 and 2. However, after considering the testimony of the other witnesses, including appellant, Jacobsen "revised his evaluation to allow half credit for those two periods of time . . . ."

In his proposed decision the administrative law judge found, as had the board, that appellant had failed to furnish evidence of nine years or more of competent experience in fire protection engineering and that his application should consequently be denied. The board adopted this as its own decision on August 18, 1982.

On January 17, 1984, appellant unsuccessfully petitioned the superior court for a writ of mandate to compel the board to set aside its order and register him as a fire protection engineer. This appeal followed.

Appellant's first two contentions urging that the board exceeded its statutory authority by denying him qualifying credit for "apprenticeship" en-

---

[4]Jacobsen apparently concluded the 28 months' experience gained by appellant in engagement 5 was not "engineering-oriented" and therefore merited no consideration even as apprenticeship experience.

gineering experience are unpersuasive. ■ It is fundamental that "[w]here the Legislature has delegated to an administrative agency the responsibility to implement a statutory scheme through rules and regulations, the courts will interfere only where the agency has clearly overstepped its statutory authority or violated a constitutional mandate." (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 356 [185 Cal.Rptr. 453, 650 P.2d 328].) Consequently our task is first "'. . . to inquire into the legality of the challenged regulation, not its wisdom. [Citations.] Second, in reviewing the legality of a regulation adopted pursuant to a delegation of legislative power, the judicial function is limited to determining whether the regulation (1) is "within the scope of [the] authority conferred" [Gov. Code, § 11342.1] and (2) is "reasonably necessary to effectuate the purpose of the statute" [Gov. Code, § 11342.2]. Moreover, "these issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with the strong presumption of regularity accorded administrative rules and regulations." [Citation.] And in considering whether the regulation is "reasonably necessary" under the foregoing standards, the court will defer to the agency's expertise and will not "superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision." [Citation.]' [Citations.]" (*Id.,* at p. 355.)

■ Appellant's assertion that "an applicant who furnished evidence of nine years or more of engineering work experience would be satisfactorily qualified under the state standards" ignores the express language of section 6767 which requires experience "*satisfactory to the board.*" (Italics added.) Implicit in this limitation is the recognition that not all engineering experience will inevitably qualify toward the nine-year minimum requirement.

■ Although the Legislature did not expressly mention an apprenticeship period, this fact, rather than suggesting a restriction on the board's power, indicates only that the Legislature gave the board a general mandate to use its expertise and power to determine how qualifying engineering experience should be measured. (See *Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 182-183 [70 Cal.Rptr. 407, 444 P.2d 79].)

Undoubtedly, in exercising that authority the board was cognizant that the Legislature's purpose, in requiring those who would practice as professional engineers to apply for registration and to provide evidence of their qualifications, was to safeguard life, health, property, and public welfare. (See Bus. & Prof. Code, §§ 6700, 6704.) Therefore, the board reasonably could have concluded that restricting qualifying experience to full-time engineering work at a professional level was necessary to effectuate those objectives.

■ Appellant also complains that guidelines distributed to aid reviewers in evaluating applications submitted pursuant to Business and Professions Code section 6767 were improperly admitted at his administrative hearing because they "were unofficial and thus irrelevant." Even assuming these guidelines, one of which suggests that under some circumstances an apprenticeship period might extend as long as 8 to 12 years, reflected an improper exercise of quasi-legislative authority, thereby depriving them of direct legal effect (*Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198 [149 Cal.Rptr. 1, 583 P.2d 744]), we cannot conceive that appellant was in any way prejudiced thereby. Admission of irrelevant material during an administrative hearing is not a "ground to annul [the board's] action if there is sufficient competent evidence to support its determination." (*So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 176 [223 P.2d 1].) Such was the case here. Experience at a subprofessional or apprenticeship level would not qualify toward the nine-year statutory minimum, even under the board's valid enactments. In addition, there is simply no basis for concluding the apprenticeship period charged to appellant reflected blind reliance upon the challenged guidelines rather than an honest evaluation of his individual situation.

Jacobsen testified that after conducting "a detailed review" of appellant's application and supporting documents, he concluded "[h]is work has been concentrated mainly in sales, design, installation, office administration and labor relations, in connection with the installation if [*sic*] extinguishing systems, almost exclusively, automatic sprinkler systems. This is a very narrowed facet of the overall spectrum of fire protection engineering and is largely accomplished at the technical level—. . . ." Nevertheless, Jacobsen indicated that having been acquainted with appellant's father, he "knew that the instruction that [appellant] got during his apprenticeship must have been of the highest quality" and he therefore "felt confident in knowing [he] was doing right in charging only six years apprenticeship [spanning engagements 3 and 4] versus the eight to twelve that most have set forth in this supplementary guideline." The administrative law judge ultimately determined that appellant should receive 19 months credit for his experience during engagement 3 and the board adopted his finding.

Appellant's third contention is also unmeritorious. ■ It is well-settled that "[i]n cases involving applications for a license, the courts have largely deferred to the administrative expertise of the agency. [Citation.] Courts are relatively ill-equipped to determine whether an individual would be qualified, for example, to practice a particular profession or trade. [Citation.] In a case involving the agency's initial determination whether an individual qualifies to enter a profession or trade the courts uphold the agency

decision unless it lacks substantial evidentiary support or infringes upon the applicant's statutory or constitutional rights. . . ." (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 146 [93 Cal.Rptr. 234, 481 P.2d 242], fns. omitted; *Professional Engineers in California Government* v. *State Personnel Bd.* (1977) 70 Cal.App.3d 346, 349 [137 Cal.Rptr. 110].)

■ Applying these principles to the instant case, the evidence was sufficient to support a finding that *none* of the experience gained by appellant during engagements 3 through 5 was qualifying because it did not constitute fulltime engineering work performed at a professional level. Given this fact, the board certainly cannot be faulted for adopting the administrative law judge's finding that appellant was entitled only to partial credit for engagement 3.

Similarly, ample evidence supported a finding that appellant devoted one-half of his time during engagements 1 and 2 to administrative responsibilities. There was great disparity between the testimony of appellant and that of his colleagues concerning the time spent on such matters. Appellant made no attempt to offer or elicit any explanation for this discrepancy, even though it was, and is, clear from the wording of Business and Professions Code section 6767 that he had the burden of demonstrating his entitlement to registration as a professional engineer. Under these circumstances the board was not obligated to give full faith and credit to appellant's personal averments on the subject.

■ Appellant argues that "full credit should be given to an individual as long as it can be established by a preponderance of the evidence that the primary function of his/her job is the accomplishment of qualified engineering tasks and that he/she personally controls, and is responsible for the successful completion of, qualified engineering operations." As we have previously discussed, the Legislature determined that, in the absence of successfully completing an examination to prove one's ability, nine years or more of qualifying engineering experience is imperative to insure the public health and safety. Requiring that this experience be gained during "full-time employment or activity" is certainly not an unreasonable means of guaranteeing that such a requisite degree of competency has been achieved. It is possible, of course, that the desired goals could be obtained by granting full credit to a person who devoted a negligible amount of his time to management functions unrelated to engineering. Nonetheless, an adjustment would yet remain appropriate where *one-half* of an individual's time was occupied by management concerns. In any event, we need not now concern ourselves with a final resolution of this problem, since appellant

still would lack nine years of qualifying experience were he to be fully credited for engagements 1 and 2.

Lastly, appellant contends that the board "made no attempt in its letters . . . dated June 8, 1966, and April 12, 1978, to explain the rationale behind its decision to deny [his] application for licensing as a fire protection engineer." Assuming that the standards set forth in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12], would govern here,[5] the reasons given for the board's denial of appellant's application were adequate "to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the board's action. . . ." (*Id.,* at p. 514.) "[G]reat specificity is not required. It is enough if the findings form an adequate analytic bridge between the evidence and the agency's decision. [Citations.] In addition, findings are to be liberally construed to support rather than defeat the order under review. [Citations.]" (*Fair Employment Practice Com.* v. *State Personnel Bd.* (1981) 117 Cal.App.3d 322, 329 [172 Cal.Rptr. 739].)

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

---

[5]The court in *Topanga* concluded that variance boards like the ones involved in that case "must render findings to support their *ultimate rulings.*" (11 Cal.3d at p. 510; italics added.) Limiting the requirement that findings be made to final administrative actions would appear to be imminently reasonable since review under Code of Civil Procedure section 1094.5 is restricted to "any final administrative . . . decision" made as a result of a statutorily mandated evidentiary hearing.