[No. B020747. Second Dist., Div. Five. Feb. 4, 1988.]

AMERICANA TERMITE COMPANY, INC., et al., Plaintiffs and Appellants, v.
STRUCTURAL PEST CONTROL BOARD et al., Defendants and Respondents.

COUNSEL

Taylor, Scott & Nichols and Michael J. Matteucci for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and William L. Marcus, Deputy Attorney General, for Defendants and Respondents.

OPINION

**ASHBY, Acting P. J.**—In this opinion we uphold the legal validity of an enforcement program of the Structural Pest Control Board.

Appellants Americana Termite Company, Inc., a California corporation, Gary Woolery, individually and doing business as Americana Termite Company, Inc., Paul Allen Ellis and Michael Andrew Gerritse appeal from a superior court judgment denying a writ of mandate upholding the suspension of their licenses as pest control operators by respondents Structural Pest Control Board, Department of Consumer Affairs of the State of California (Board), and Mary Lynn Ferreira. We affirm.

### FACTS

In 1982 Dennis Patzer, deputy registrar in charge of Board enforcement programs, had the responsibility for the Board's active enforcement program (AEP). The program was originally designed to uncover fraud in the

pest control business. In 1982, focus shifted to consumer protectionism by seeking administrative action against negligent and incompetent inspectors and termite companies. Patzer submitted to the Board a yearly prepared proposal indicating the general scope of the program but not delineating the specific companies to be investigated. After obtaining Board approval for the general description of the program, Patzer would select companies with the largest number of complaints within a specific geographical area. A Board investigator contacted various homes in the geographical area to request the homeowner participate in the program. Investigators would inspect each home to determine if there were infestations or conditions likely to lead to infestations. Thereafter, the homeowner called the companies designated by Patzer and requested termite inspections. After the companies inspected the homes, they filed the required reports with the Board. The inspection reports were then analyzed to determine if the reports uncovered the problems previously identified by the Board investigators. The filed reports were evaluated on a point system.

In the underlying matter, in November-December 1982, three homes were selected in the Long Beach area. One hundred points were assigned to each home. If a filed report scored less than seventy, or if it missed any one of the most serious violations, or three of the next most serious violations it would be referred to the division of investigations to seek discipline.

Accusations were filed against appellants when they filed inadequate reports on the three homes.[1] In a writ of mandate proceeding, the superior court upheld the administrative decision to discipline each appellant due to inspection and reporting violations.

Appellants do not contest the factual findings below. In this appeal they question the legal validity of the AEP.

### STRUCTURAL PEST CONTROL ACT

■ Appellants contend that the AEP deprived them of statutory rights under the Structural Pest Control Act. Appellants' contention lacks merit.

Business and Professions Code section 8500 et seq., the Structural Pest Control Act, authorizes the Board to regulate, administrate, license, and

---

[1] Appellants received a score of zero for at least one home because no report was filed with the Board.

discipline structural pest control operators. The Board is authorized to investigate, hold hearings, and impose discipline not only on the filing of a complaint by a consumer, but also "upon its own motion." (Bus. & Prof. Code, § 8620.) If a complaint is filed by a consumer, Business and Professions Code section 8622 delineates the procedures which are to be followed. Citizen complaint procedures include giving notice to the company that a complaint has been filed and providing the company 30 days in which to cure any defect. Contrary to appellants' assertion, the Board need not follow the procedures as outlined in Business and Professions Code section 8622 when it files a complaint on its own motion pursuant to Business and Professions Code section 8620.[2] Thus, appellants were not entitled to notice, or an opportunity to cure the defect, or the other procedures outlined in Business and Professions Code section 8622 and were not denied rights under the act.[3]

## EQUAL PROTECTION

■ Appellants contend that the AEP violated their equal protection rights. Appellants' contention lacks merit.

■ "[T]he Constitution, federal and state, [requires] that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Educational & Recreational Services, Inc.* v. *Pasadena Unified Sch. Dist.* (1977) 65 Cal.App.3d 775, 785 [135 Cal.Rptr. 594], fn. omitted.) In cases involving occupational licensing, " '[t]he conventional "rational relationship" test is traditionally applied . . . .' " (*Bib'le* v. *Committee of Bar Examiners* (1980) 26 Cal.3d 548, 555 [162 Cal.Rptr. 426, 606 P.2d 733], quoting *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 17 [112 Cal.Rptr. 786, 520 P.2d 10].) According to this test, if the classifications rationally relate to a legitimate state interest, the equal protection clause is not violated even if the classifications made by its laws are imperfect, not mathematically precise, or result in some inequality. (Cf. *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 410 [128 Cal.Rptr. 183, 546 P.2d 687].)

■ There is no question that protecting the public from negligent or incompetent pest control operators is a legitimate state interest. Further, in

---

[2] The Board properly delegated its authority to file a complaint to the registrar. (Cal. Code Regs., tit. 16, § 1903.)

[3] Inasmuch as Business and Professions Code section 8622 did not apply, appellants' argument that they were denied due process under this section also lacks merit.

selecting the companies with the most complaints to investigate, the Board has chosen a method which is rationally related to that purpose. Neither the grading system nor the selection process (i.e., utilizing the number of complaints as the triggering mechanism without reference to a company's size or volume of business) makes the selection process irrational. Contrary to appellants' suggestion, there is no showing that appellants "were purposefully and intentionally selected for discrimination," or that it was inappropriate to treat appellants differently from others against whom disciplinary action was pending, or that the program operated at the "whim" of Patzer. The program was an organized system for evaluating the professional competency of pest control investigators and bringing forth charges when warranted.

## ADMINISTRATIVE PROCEDURE ACT

Appellants contend that the AEP was a "regulation" and thus the Board erred in not following the procedural requirements of the Administrative Procedure Act. Appellants' contention lacks merit.

Under the Administrative Procedure Act, Government Code section 11342 et seq., an administrative agency must follow certain procedures, including giving notice to interested parties, when the agency formulates a "regulation." Government Code section 11342, subdivision (b), set forth below[4] defines a " 'Regulation' " as "every rule . . . or standard of general application . . . or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it . . . ." Specifically excluded from the definition of a regulation are those rules which relate "only to the internal management of the state agency."

Contrary to appellants' argument, for which they cite no authority, the AEP was not a regulation and therefore the Board did not have to comply with the procedural requirements of the Administrative Procedure Act. The AEP did not determine if a licensee violated the Structural Pest Control Act, but was merely an internal enforcement and selection mechanism. The termite inspection industry was aware of the existence of the AEP due to the open legislative hearings. The AEP investigative procedures were sub-

---

[4] Government Code section 11342, subdivision (b), provides in pertinent part: " 'Regulation' means every rule, regulation, order, or standard of general application or the amendment, supplement or revision of any such rule, regulation, order or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of the state agency. . . ."

ject to disclosure under the California Public Records Act. (Cf. *Cook* v. *Craig* (1976) 55 Cal.App.3d 773, 784 [127 Cal.Rptr. 712].) Therefore the process was not "surreptitious" as suggested by appellants. ██ ██ Inasmuch as the process did not violate appellants' equal protection rights, and the administrative hearings which followed provided appellants with due process protections, the AEP was a proper exercise of the Board's powers.

The judgment is affirmed.

Boren, J., and Hastings, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.