[No. B036081. Second Dist., Div. Three. Apr. 2, 1990.]

RAYMOND E. GRIER, Plaintiff and Respondent, v. KENNETH KIZER, as Director, etc., et al., Defendants and Appellants.

COUNSEL

John K. Van de Kamp, Attorney General, Charlton G. Holland III, Assistant Attorney General, Stephanie Wald and Harlan E. Van Wye, Deputy Attorneys General, for Defendants and Appellants.

Henry R. Fenton for Plaintiff and Respondent.

Catherine I. Hanson, Astrid G. Meghrigian, Alice P. Mead, John D. Smith, Herbert F. Bolz, Davis, Cowell & Bowe, Richard G. McCracken and Andrew J. Kahn as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Defendants and appellants Kenneth Kizer, Director of the Department of Health Services, State of California (Director), and the Department of Health Services, State of California (Department) (sometimes collectively referred to as Department), appeal a judgment granting plaintiff and respondent Dr. Raymond E. Grier's (Grier) petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5). Grier's petition successfully challenged an administrative determination that he overcharged the Department. We affirm the judgment.

## SUMMARY STATEMENT

The Department used an in-house random sampling and extrapolation method to audit the claims for payment of physicians who were Medi-Cal providers. The Department viewed this method of auditing as consistent with accepted auditing principles and as a rule of internal management; as such, the auditing procedure was exempt from the necessity of promulgating a regulation pursuant to the Administrative Procedure Act (APA). (Gov. Code, §§ 11340 et seq., 11370).[1]

After losing at the administrative level, Grier, one of the physicians, filed a petition for writ of administrative mandamus to challenge the Department's audit of his claims on the grounds, inter alia, the method utilized was in violation of the APA and thus void and unenforceable.

While the petition for writ was pending, the Office of Administrative Law (OAL), the state agency charged with reviewing proposed administrative

---

[1] All statutory references are to the Government Code unless otherwise specified.

regulations, determined the Department's audit procedure to be the subject of a regulation within the contemplation of section 11342, subdivision (b). Therefore, because the audit technique had not been duly adopted as a regulation pursuant to the APA, the OAL deemed it to be an invalid and unenforceable "underground" regulation.[2]

The OAL's determination in this regard is entitled to due deference. Further, case law holds that where an agency's rule is of general application, as contrasted with dealing with matters relating solely to the management of an agency's internal affairs, the rule becomes the subject of a regulation, which regulation must be adopted pursuant to APA standards.

We find the Department's random sampling audit method was a standard of general application to all Medi-Cal providers and should have been promulgated as a regulation in accordance with the APA. We affirm the judgment.

FACTUAL & PROCEDURAL BACKGROUND

Grier was a provider under the Medi-Cal program. In August or September of 1982, the Department audited claims for payment filed by Grier during the period between December 1980 and March 1982. The total amount paid to Grier for the period was $932,642.

Fan Yee (Yee), an operations research specialist for the Department, developed a random sampling plan to audit physician claims. As to Grier, Yee selected a sample size of 200 pages from a 9,711-page record of all claims for services rendered to Medi-Cal beneficiaries by Grier during the period in question and submitted for payment.

After the selected samples were audited, the audit results were extrapolated, which process disclosed an estimated overpayment to Grier of $654,592, with a 95 percent confidence at a projection of plus or minus $16,344.

Grier filed an audit appeal with the Department. A hearing was held before the Department's administrative law judge (ALJ) on December 4, 1985. Grier, his expert, Dr. Michael Intriligator, and Yee testified. Grier testified as to the wide variety of patients seen in his practice. In his testimony, Intriligator attacked Yee's methodology, opining that in view of the

---

[2] The OAL has filed an amicus curiae brief in support of Grier. Amici curiae briefs in support of Grier also have been filed by the Union of American Physicians and Dentists and by the California Medical Association.

heterogeneity of Grier's practice, a stratified sampling method would have yielded a more accurate result than simple random sampling.[3]

In an interlocutory decision adopted April 15, 1986, the Department held: "The appeal with respect to [the] Department's ability to offer as proof the sampling and extrapolation methods employed by the Department in this case is denied. However, the determination of the ultimate trustworthiness of the sample and extrapolation methodology in terms of the weight to be given the evidence is reserved until there has been a full hearing on the audit adjustments (possible sources of nonrandom error) and a recalculation of both the estimated overpayment and precision has been made."

On September 29, 1986, Grier filed a petition for writ of mandate, alleging, inter alia, the sampling methods utilized by the Department were arbitrary and capricious, there was no evidence to support the findings of the ALJ, and the ALJ employed by the Department was biased. Grier subsequently filed an amended petition, alleging the sampling methods adopted by the Department were in violation of the APA and thus void and unenforceable.

The Department's answer urged, inter alia, that Grier's challenge to its authority to use the subject sampling method was untimely. The Department also invoked Welfare and Institutions Code section 14170, requiring the Department to audit Medi-Cal providers in a manner consistent with accepted auditing practices, as sufficient authority for the method in issue.

During this time frame, the Union of American Physicians and Dentists requested the OAL to determine whether the Department's policy of using a statistical sampling and extrapolation method for determining overpayment when auditing physicians' claims constituted a regulation as defined in section 11342, subdivision (b).

After considering the Department's arguments, the OAL filed an opinion concluding: the challenged audit method was a regulation, none of the recognized exceptions to the APA rules was applicable, and because the method had not been duly adopted as a regulation and filed with the Secretary of State in accordance with the APA, it was invalid and unenforceable. (1987 OAL Determination No. 10 [Docket No. 86-016] Aug. 6, 1987.)

---

[3] An illustration given is of a sample drawn from a box containing 500 pounds of oranges and diamonds. A random 10-pound sample might yield a misleading value if it contained a disproportionate number of diamonds. Stratified sampling, as contrasted with random sampling, would draw separate samples of diamonds and oranges.

The hearing on the petition for writ of mandate was held on April 6, 1988. The record of the administrative proceedings was received into evidence, arguments were presented and the matter was submitted.

The trial court ruled "the statistical methods utilized by [the Department] in this case are invalid and unenforceable for failure to comply with the requirements of the Administrative Procedure Act, Gov. Code Sections 11342 et seq., [sic] and as a separate and independent basis for judgment, having also determined that there is not substantial evidence to support the findings of fact of the Director . . . that the statistical methods utilized by the Department in this case were valid or adequate[.]"

The trial court granted Grier's petition to set aside the Department's decision and ordered the Department to refrain from making any claim against Grier based upon the sampling and extrapolation methods utilized herein.

Following entry of judgment, the Department appealed.[4]

## CONTENTIONS

The Department contends: (1) Grier's challenge to its authority to use statistical sampling audit techniques is untimely and therefore Grier has waived any right to challenge same; (2) Grier's challenge to its authority to utilize such method is without merit; (3) the subject sampling methodology is appropriate and valid; and (4) its application of the audit methodology was proper.

## DISCUSSION

1. *Grier's challenge to the Department's authority to use the subject audit method is properly before this court.*

The Department contends Grier's challenge to its authority to use statistical sampling techniques is untimely because Grier did not make the argument at the administrative level but instead, first raised the issue in his petition for writ of mandate. The trial court properly rejected this argument.

Futility is an exception to the exhaustion of administrative remedies doctrine. (*McKee* v. *Bell-Carter Olive Co.* (1986) 186 Cal.App.3d 1230, 1245

---

[4]Although the ALJ's decision was interlocutory, the trial court's ruling in favor of Grier was appealable. It was a final judgment both in form and in effect because it fully disposed of the litigation. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 43-44, pp. 66-68.)

[231 Cal.Rptr. 304].) Here, the Department consistently has maintained it has the authority to utilize the audit method in issue, even after the OAL's 1987 determination which found the sampling method to be an invalid regulation. In view of the Department's unyielding position that it has statutory authority to audit providers by way of sampling and extrapolation, an administrative challenge by Grier based on the Department's failure to promulgate the regulation pursuant to the APA certainly would have been futile.

2. *OAL review of administrative regulations mandated by APA.*

The APA was enacted to establish basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations promulgated by the state's many administrative agencies. (Stats. 1947, ch. 1425, §§ 1, 11, pp. 2985, 2988; former Gov. Code § 11420, see now § 11346.) Its provisions are applicable to the exercise of any quasi-legislative power conferred by statute. (§ 11346.) The APA requires an agency, inter alia, to give notice of the proposed adoption, amendment or repeal of a regulation (§ 11346.4), to issue a statement of the specific purpose of the proposed action (§ 11346.7), and to afford interested persons the opportunity to present comments on the proposed action (§ 11346.8). Unless the agency promulgates a regulation in substantial compliance with the APA, the regulation is without legal effect. (*Armistead* v. *State Personnel Board* (1978) 22 Cal.3d 198, 204 [149 Cal.Rptr. 1, 583 P.2d 744].)

In 1979, the Legislature established the OAL and charged it with the orderly review of administrative regulations. In so doing, the Legislature cited an unprecedented growth in the number of administrative regulations being adopted by state agencies as well as the lack of a central office with the power and duty to review regulations to ensure they are written in a comprehensible manner, are authorized by statute and are consistent with other law. (§§ 11340, 11340.1, 11340.2)[5]

---

[5]Section 11340 states: "The Legislature finds and declares as follows: [¶] (a) There has been an unprecedented growth in the number of administrative regulations in recent years. [¶] (b) The language of many regulations is frequently unclear and unnecessarily complex, even when the complicated and technical nature of the subject matter is taken into account. The language is often confusing to the persons who must comply with the regulations. [¶] (c) Substantial time and public funds have been spent in adopting regulations, the necessity for which has not been established. [¶] (d) The imposition of prescriptive standards upon private persons and entities through regulations where the establishment of performance standards could reasonably be expected to produce the same result has placed an unnecessary burden on California citizens and discouraged innovation, research, and development of improved means of achieving desirable social goals. [¶] (e) There exists no central office in state government with the power and duty to review regulations to ensure that they are written in a comprehensible manner, are authorized by statute and are consistent with other law. [¶] (f) Correcting the problems that have been caused by the unprecedented growth of regulations in

The APA defines a regulation as "every rule, regulation, order, or standard [of] general application . . . adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of the state agency." (§ 11342, subd. (b).)[6]

Section 11347.5 thereof states: "(a) No state agency shall issue, utilize, enforce, or attempt to enforce any . . . rule, which is a regulation as defined in subdivision (b) of Section 11342, unless the . . . rule has been adopted as a regulation and filed with the Secretary of State pursuant to this chapter. [¶] (b) If the [OAL] is notified of, or on its own, learns of the issuance, enforcement of, or use of, . . . [a] rule which has not been adopted as a regulation and filed with the Secretary of State pursuant to this chapter, the [OAL] may issue a determination as to whether the . . . rule, is a regulation as defined in subdivision (b) of Section 11342."

OAL determinations as to whether a rule is a regulation are filed with the Secretary of State and published in the California Regulatory Notice Register. (§ 11347.5, subd. (c)).

Any interested person may obtain judicial review of a given determination by the OAL by filing a written petition with the court within 30 days of the date the determination is published requesting the determination of the OAL be modified or set aside. (§ 11347.5, subd. (d).) Also, if the OAL disapproves a proposed regulation submitted for its review, the adopting agency has recourse to the Governor, who may overrule an OAL decision disapproving a proposed regulation. (§ 11349.5.)

a. *Application of the APA to the Department.*

The California Medi-Cal Act explicitly makes the Department's rule making subject to the provisions of the APA. (Welf. & Inst. Code, §§ 14000 et seq., 14000.4, 14124.5.)

Welfare and Instutitions Code section 10725 provides in relevant part: "The director [of the Department] may adopt regulations, orders, or standards of general application to implement, interpret, or make specific the law enforced by the department, and such regulations, orders, and standards shall be adopted, amended, or repealed by the director only in accordance with the provisions of [the APA] . . . ."

---

California requires the direct involvement of the Legislature as well as that of the executive branch of state government."

[6]Section 11342, subdivision (b), also exempts "any form prescribed by a state agency or any instructions relating to the use of the form, . . ." That exception is not in issue here.

Similarly, Welfare and Institutions Code section 14124.5, found within the Medi-Cal Act, states in pertinent part: "(a) The director may, in accordance with the provisions of Section 10725, adopt, amend or repeal, in accordance with [the APA], such reasonable rules and regulations as may be necessary or proper to carry out the purposes and intent of this chapter and to enable it to exercise the powers and perform the duties conferred upon it by this chapter, not inconsistent with any of the provisions of any statute of this state."[7]

Despite the clear directive of the above mentioned statutes, the Department argues that other sections of the Medi-Cal Act provide sufficient authorization for its use of the challenged audit method without the formality of regulation promulgation and OAL review.

The Department invokes, inter alia, Welfare and Institutions Code section 14170, which states in relevant part: "Amounts paid for services provided to Medi-Cal beneficiaries shall be audited by the department *in the manner and form prescribed by the department.*" (Italics added.) The Department also cites Welfare and Institutions Code section 14133, as authorizing "(c) Postservice postpayment audit, which is review for medical necessity and program coverage after service was rendered and the claim paid. The department may take appropriate steps to recover payments made if subsequent investigation uncovers evidence that the claim should not have been paid."

■ It is a fundamental rule of statutory construction that every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 484 [208 Cal.Rptr. 724, 691 P.2d 272].) Accordingly, while the above-cited sections and others authorize the Department to audit providers, these sections must be read in conjunction with the balance of the Medi-Cal scheme, specifically, Welfare and Institutions Code sections 10725 and 14124.5, which require the Department to comply with the APA in adopting regulations.

The issue to be determined by this court is whether the challenged audit method constitutes the subject of a regulation within the meaning of section 11342, subdivision (b), of the APA, or amounts only to an exempt internal management rule. If the method were properly the subject of a formal regulation, the Department's failure to comply with the APA would render the method invalid and unenforceable. (§ 11347.5.)

---

[7] Welfare and Institutions Code sections 10725 and 14124.5, in requiring compliance with the APA, both refer to chapter 4.5 (commencing with § 11371), of part 1, division 3, title 2 of the Government Code. While chapter 4.5 was repealed by Statutes 1979, chapter 567, section 2, the relevant provisions are continued in chapter 3.5, which begins at section 11340. (See table at 32B West's Ann. Gov. Code (1980 ed.) p. 736; Deering's Ann. Gov. Code (1982 ed.) p. 622.)

3. *Standard of appellate review.*

The trial court ruled the Department's use of the subject statistical method was invalid for failure to comply with the requirements of the APA.

■ Review of that decision is a question of law for this court's independent determination, namely, whether the Department's use of an audit method based on probability sampling and statistical extrapolation constitutes a regulation within the meaning of section 11342, subdivision (b). (See *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Shoban v. Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].)

■ While the issue ultimately is one of law for this court, "the contemporaneous administrative construction of [a statute] by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. [Citations.]" *(Coca-Cola Co. v. State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1]; accord *Cannon v. Industrial Acc. Comm.* (1959) 53 Cal.2d 17, 22 [346 P.2d 1]; *Rivera v. City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].)

Because section 11347.5, subdivision (b), charges the OAL with interpreting whether an agency rule is a regulation as defined in section 11342, subdivision (b), we accord its determination due consideration.

4. *The Department's audit method should have been promulgated as a regulation pursuant to the APA.*

As indicated, the OAL filed an opinion concluding the challenged audit method amounted to a regulation within the meaning of the definition set forth in section 11342, subdivision (b).[8]

The OAL's analysis set forth a two-part test: "First, is the informal rule either a rule or standard of general application or a modification or supplement to such a rule? [¶] Second, does the informal rule either implement, interpret, or make specific the law enforced or administered by the agency or govern the agency's procedure?" (1987 OAL Determination No. 10, *supra.*)

The OAL concluded this particular audit method was a standard of general application "applied in every Medi-Cal case reviewed by [Depart-

---

[8] Because it was the Union of American Physicians and Dentists, and not Grier, which sought the OAL determination, we are not precluded from considering the OAL's opinion. (§ 11347.5, subd. (e).)

ment] audit teams and . . . used to determine the amount of overpayment." Further, the method implemented Welfare and Institutions Code sections 14170 and 14133, which authorize the Department to audit providers and to take appropriate steps to recover overpayments. The Department thus had the rulemaking authority to adopt regulations concerning the use of probability sampling and statistical extrapolation, and was required to comply with the APA before utilizing such audit method. (1987 OAL Determination No. 10, *supra*.)

We accord due consideration to the OAL's determination and also examine case law which has construed the APA's definition of regulation. The case law, which is sparse, discloses generally that the definition of regulation is broad, as contrasted with the scope of the internal management exception, which is narrow.

    a. *The Department's method is not entitled to deference as an administrative interpretation.*

■ The Department urges that while the OAL's construction of the APA is entitled to deference, the probability sampling and extrapolation method should be given weight as the Department's administrative interpretation of the Medi-Cal Act.

In rejecting a similar contention, the Supreme Court in *Armistead* observed that a major aim of the APA was to provide a procedure whereby people to be affected by proposed regulatory action may be heard on the merits of proposed rules. (*Armistead* v. *State Personnel Board, supra*, 22 Cal.3d at p. 204.) "Yet we are here requested to give weight to [a rule] in a controversy that pits the [agency] against an individual member of exactly that class the APA sought to protect before rules like this are made effective. That, we think, would permit an agency to flout the APA by penalizing those who were entitled to notice and opportunity to be heard but received neither." (*Ibid.*)

The Department's argument is clearly answered by the *Armistead* rationale and therefore the audit method in issue merits no weight as an agency interpretation. (*Armistead, supra*, 22 Cal.3d at p. 205.) "To hold otherwise might help perpetuate the problem" of " ' "house rules of the agency" ' " which are promulgated without public notice, opportunity to be heard, filing with the Secretary of State, and publication in the California Code of Regulations. (*Ibid.*)

    b. *Internal management exception inapplicable.*

As set forth above, the APA defines regulation as "every rule, regulation, order, or *standard [of] general application* . . . adopted by any state agency

to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, *except one which relates only to the internal management of the state agency.*" (§ 11342, subd. (b), italics added.)

*Armistead* v. *State Personnel Board, supra*, 22 Cal.3d at pages 200-201, determined that an agency rule relating to an employee's withdrawal of his resignation did not fall within the internal management exception. The Supreme Court reasoned the rule was "designed for use by personnel officers and their colleagues in the various state agencies throughout the state. It interprets and implements [a board rule]. It concerns termination of employment, a matter of import to all state civil service employees. It is not a rule governing the board's internal affairs. [Citation.] 'Respondents have confused the internal rules which may govern the department's procedure . . . and *the rules necessary to properly consider the interests of all . . . under the . . . statutes . . . .*') [Fn. omitted.]" (*Id.*, at pp. 203-204, italics added.)

*Armistead* cited *Poschman* v. *Dumke* (1973) 31 Cal.App.3d 932, 942-943 [107 Cal.Rptr. 596], which similarly rejected a contention that a regulation related only to internal management. The *Poschman* court held: " 'Tenure within any school system is a matter of serious consequence involving an important public interest. The consequences are not solely confined to school administration or affect only the academic community.' " (*Armistead, supra*, 22 Cal.3d at p. 204, fn. 3.)[9]

Relying on *Armistead,* and consistent therewith, *Stoneham* v. *Rushen* (1982) 137 Cal.App.3d 729, 736 [188 Cal.Rptr. 130], held the Department of Corrections' adoption of a numerical classification system to determine an inmate's proper level of security and place of confinement "extend[ed] well beyond matters relating solely to the management of the internal affairs of the agency itself[,]" and embodied "a rule of general application significantly affecting the male prison population" in its custody.

■ By way of examples, the above mentioned cases disclose that the scope of the internal management exception is narrow indeed. This is underscored by *Armistead*'s holding that an agency's personnel policy was a regulation because it affected employee interests. Accordingly, even internal administrative matters do not per se fall within the internal management exception.

Nonetheless, the Department argues the provider is not required to do anything differently when the Department uses probability sampling to

---

[9]*Armistead* disapproved *Poschman* on other grounds. (*Armistead, supra,* 22 Cal.3d at p. 204, fn. 3.)

prove an overpayment than it would be required to do in a full scale audit. However, the Department's use of probability sampling might cause a provider to leave the Medi-Cal program to avoid the potential for large recoupments based on probability sampling. Further, whether a regulation requires affirmative conduct by an affected party is not dispositive. In *Stoneham* v. *Rushen, supra,* 137 Cal.App.3d at page 736, the adoption of a standardized scoring system to determine an inmate's classification invoked the APA because it was "a rule of general application significantly affecting the male prison population," although it does not appear the new system imposed an additional burden on the inmates.

In a case decided before *Armistead, City of San Joaquin* v. *State Bd. of Equalization* (1970) 9 Cal.App.3d 365, 374-375 [88 Cal.Rptr. 12], a statistical accounting technique was held not to be a regulation within the meaning of the APA.

Briefly, in that case, revenues from sales taxes imposed on over-the-counter sales were allocated to each taxing jurisdiction in direct proportion to the reported sales attributable to such jurisdiction. But, as to sales taxes derived from construction contracts, the taxes were returned to the cities and the county in the same ratio as such cities and county received revenues from over-the-counter sales for the same quarterly periods. Thus, each taxing jurisdiction received its prorated share of revenues from construction contracts under a formula which was geared to the revenues it received from over-the-counter sales. (*City of San Joaquin* v. *State Bd. of Equalization, supra,* 9 Cal.App.3d at p. 375.)

The *San Joaquin* court held the challenged pooling procedure was "not a regulation, order or standard of general application" but "merely a statistical accounting technique to enable the Board to allocate, as expediently and economically as possible, to each [participating city], its fair share of sales taxes collected by the Board on that city's behalf." (*City of San Joaquin, supra,* 9 Cal.App.3d at p. 375.)

In view of the Supreme Court's subsequent recognition in *Armistead* of the distinction between purely internal rules which merely govern an agency's procedure and rules which have external impact so as to invoke the APA (*Armistead, supra,* 22 Cal.3d at pp. 203-204), *San Joaquin*'s holding that statistical accounting techniques are exempt from the APA appears to have lost its precedential value. After *Armistead,* it would appear an accounting procedure resulting in a possibly disproportionate allocation of tax revenues would be the appropriate subject of a regulation adopted pursuant to the APA, allowing interested parties to be heard on the merits of the proposed rule.

Further, because the Legislature adopted the APA to give interested persons the opportunity to provide input on proposed regulatory action (*Armistead, supra*, 22 Cal.3d at p. 204), we are of the view that any doubt as to the applicability of the APA's requirements should be resolved in favor of the APA.

We are also aware of *Americana Termite Co.* v. *Structural Pest Control Bd.* (1988) 199 Cal.App.3d 228 [244 Cal.Rptr. 693], decided after *Armistead,* which held an agency enforcement program was not a "regulation" subject to the APA.

There, pursuant to the enforcement program, the agency inspected the homes of participating homeowners. Thereafter, the homeowner contacted the companies designated by the agency and requested termite inspections. The agency then analyzed the companies' inspection reports to determine if the reports uncovered the problems previously identified by the agency's investigators. (*Americana Termite Co., supra*, 199 Cal.App.3d at pp. 230-231.) Without citation to authority, the *Americana* court concluded the enforcement program was not a regulation but merely "an internal enforcement and selection mechanism." (*Id.*, at p. 233.)

Thus, the *Americana* court apparently concluded "internal management" and "enforcement" are synonymous. Its reasoning is not fully developed. The fact that a rule pertains to enforcement does not establish that it relates only to internal management. In the instant case, while the challenged audit method facilitated enforcement, it also was a standard of general application adopted to implement the Department's statutory auditing authority.

Having made an independent determination as to what constitutes a regulation for purposes of the APA, we conclude the internal management exception is inapplicable. We therefore concur in the OAL's conclusion that the challenged audit method was an improper regulation not promulgated pursuant to the APA; it was a standard of general application which, in implementing the Department's statutory auditing authority, affected Medi-Cal providers statewide.

c.   *The Department's other arguments are unavailing.*

■   The Department further submits there was no need to promulgate a regulation because the only legally tenable interpretation of its statutory auditing authority is that statistical sampling and extrapolation procedures must be utilized. The argument is without merit. While sampling and extrapolation may be more feasible or cost-effective, it does not follow that such method is the sole *tenable* interpretation of Welfare and Institutions

Code sections 14133 and 14170. A line by line audit is an alternative tenable interpretation of the statutes.

■ The Department also urges that by refraining from the adoption of a formal regulation, it advanced the APA's goal of reducing the number of administrative regulations. (§ 11340.1.) The argument is unpersuasive. It is for the OAL to determine whether a regulation is necessary and nonduplicative; a regulation found to be unnecessary or duplicative will be disapproved. (§ 11349.1, subds. (a)(1) and (a)(6).)

*5. The Department acquiesced in the OAL's determination that the subject audit method constitutes a regulation.*

■ Lastly, we note the Department acquiesced in the OAL's adverse 1987 determination. Following that determination, it formally promulgated a regulation under the APA, providing for statistical extrapolation of Medi-Cal provider reviews. (Cal. Code Regs., tit. 22, § 51458.2, operative May 13, 1988.) The regulation requires "probability sampling to extrapolate the recoverable amount when the extrapolated recovery amount exceeds the cost to the Department of doing the audit." (Cal. Code Regs., tit. 22, § 51458.2, subd. (a).) The regulation further provides: "Probability sampling will be done in conformance with generally accepted statistical standards and procedures described in any textbook on statistical sampling methods." (Cal. Code Regs., tit. 22, § 51458.2, subd. (b).)[10]

While the Department contends the formal regulation was a mere codification of its audit procedures, its failure to object to the OAL's adverse 1987 determination, compounded by its subsequent compliance with the APA, in effect constitutes an acquiescence in the OAL's determination.

CONCLUSION

A major aim of the Legislature in enacting the APA was to provide an opportunity for persons to be affected by proposed regulatory action to be heard on the merits of the proposal. (*Armistead* v. *State Personnel Board, supra,* 22 Cal.3d at p. 204.) The internal management exception to the APA is narrow and is inapplicable where a rule is to have general application and is to affect persons subject to regulation by the agency.

[10]The Department's statement of necessity for the regulation reflected that many Medi-Cal providers were unaware of the Department's use of probability sampling and statistical extrapolation.

In complying with the APA, the Department received comments from the California Pharmacists Association, the California Medical Association, and the Union of American Physicians and Dentists, among others.

Because the challenged audit method was a standard of general application implementing the Department's statutory auditing authority, the OAL properly determined the method was an improper "underground" regulation which should have been adopted pursuant to the APA.

■ The Department's failure to comply with the APA renders the method invalid and unenforceable. Therefore, we do not reach the statistical validity of the method, whether it was correctly employed, or any other contentions.[11]

## DISPOSITION

We affirm the judgment barring the Department from making any claim against Grier based on the sampling and extrapolation method it utilized in the audit. Grier to recover costs on appeal.

Danielson, J., and Croskey, J., concurred.

On May 2, 1990, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied June 21, 1990.

---

[11] The judgment of the trial court bars the Department from making any claim against Grier based upon the sampling and extrapolation method it utilized in the audit. As indicated, operative May 13, 1988, the Department adopted California Code of Regulations, title 22, section 51458.2, authorizing statistical extrapolation of Medi-Cal provider reviews. We decline to render an advisory opinion as to whether this newly adopted regulation allows statistical extrapolation of claims for services rendered prior to its operative date.