[No. B069097. Second Dist., Div. Seven. Dec. 13, 1993.]

EDWARD B. FRANKEL, Plaintiff and Appellant, v.
KENNETH KIZER, as Director, etc., et al., Defendants and Respondents.

**COUNSEL**

Henry R. Fenton and Douglas B. Schwab for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Richard T. Waldow, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**WOODS (Fred), J.**—Petitioner appeals from a judgment denying his petition for a writ of mandamus ordering Kenneth Kizer, the Director (Director) of the Department of Health Services (Department) of the State of California to return the $173,014 paid by petitioner pursuant to an illegal sampling and extrapolation audit methodology utilized by the Department under the Medi-Cal program. As appellant did not file his writ petition within the applicable statute of limitations, we affirm.

### FACTUAL AND PROCEDURAL SYNOPSIS

### I. *Administrative Proceedings*

Appellant is a physician who was a Medi-Cal provider. Appellant was a dermatologist who was the director of a large group specializing in hair transplantation, cosmetic surgery and dermatology. During the relevant time period, he employed 10 to 12 dermatologists and 10 to 12 cosmetic surgeons and operated 3 facilities.

The Department regularly audits claims submitted by providers. Providers are entitled to a formal administrative hearing on any disputed overpayment assessment.

From June 30 to July 8, 1980, the Department conducted an on-site review of appellant's Medi-Cal practice by examining the records of his facilities in Los Angeles/Lakewood, San Diego and Huntington Beach. The review concerned services rendered from December 1978 through March 1980. The audit revealed numerous violations of the regulations pertinent to Medi-Cal providers, most prominently those requiring documentation of the services billed to Medi-Cal. Using a sampling and extrapolation methodology, the Department estimated the amount that appellant had been overpaid for all of his Medi-Cal patients during the applicable time period.

Appellant, who was represented by counsel, challenged the audit. A preliminary conference was held in July of 1981. Appellant submitted a 35-page preliminary conference statement, with 52 pages of exhibits. Recommended findings were issued on February 28, 1983.

On January 28, 1985, a hearing was held before an administrative law judge (ALJ) regarding appellant's contention that the Department should be estopped from pursuing recovery of the overpayment because it had either misled or misinformed him so as to lead him to believe that his method of

documentation was proper. On March 26, 1985, the ALJ issued an interlocutory decision (later adopted by the Director), concluding that appellant's argument was without merit. Appellant did not appeal that decision.

Appellant thereafter appealed, to the formal level of administrative review, the audit findings themselves.[1] The Department accepted as an issue for hearing whether errors in the audit report "discredit the basis for the statistical extrapolation." On July 8 through 10, 1986, a hearing was held before an ALJ. On February 9, 1987, the ALJ issued his proposed decision in which he reversed some of the audit findings and affirmed others.

On August 6, 1987, the Office of Administrative Law (OAL) determined that the Department's audit method was an "underground regulation," meaning that it was invalid and unenforeceable because it had not been promulgated in accordance with the Administrative Procedure Act (APA). (Gov. Code, §§ 11340 et seq. and 11370.)[2]

On January 14, 1988, the Director issued a final decision which granted the appeal in part and denied it in part.[3] The Director found that the issue of the statistical method itself had not been appealed and thus the Department was free to employ that method in making its final computation. The amount found to be owed was $90,609.54, exclusive of interest (including interest, the total amount was $173,014.30). Appellant paid the amount due.

On January 10, 1991, appellant filed in superior court a petition for a writ of mandate.

## II. *The Trial Court Proceedings*

The petition came on for hearing on May 8, 1992. The court denied appellant's previous disqualification motion as untimely and denied the petition. It sustained respondents' objections to appellant's declaration and exhibits.[4]

The minute order stated: "The Court finds cause of action is barred by statute of limitations found in . . . section 14171(k) and *Union of American*

---

[1] Appellant claimed that the audit was part of a discriminatory prosecution of him owing in part to his having testified against a friend of a former Attorney General. Appellant admits he did not challenge the use of the method itself.

[2] Thereafter, the Department promulgated a new regulation which authorized the use of the methodology. The new regulation became effective on May 13, 1988. (Cal. Code Regs., tit. 22, § 51458.2.)

[3] After the ALJ's proposed decision, the Director opened the record for the parties to brief the issue of whether the ALJ had properly applied the method even though the method had not been raised as an issue, but neither party submitted additional argument.

[4] In appellant's opening brief, he used that declaration as support for his fact statement. After respondents pointed out in their brief that the declaration had been ruled inadmissible,

*Physicians [& Dentists]* v. *Kizer* (1990) 223 Cal.App.3d 490 [272 Cal.Rptr. 886]. The Court further finds no abuse of discretion nor any arbitrary or capricious acts/decisions on respondent[s'] part."

Appellant filed a timely notice of appeal.

## DISCUSSION

Appellant contends that the issues presented on appeal are (1) whether he is barred from seeking recovery by the six-month statute of limitations where the Department continuously represented that it had the authority to utilize such a methodology, (2) whether a three- or four-year statute of limitations is applicable in a mandamus action seeking to compel the return of funds obtained by means of a sampling methodology not lawfully promulgated as a regulation under the APA, and (3) whether the Department is estopped from invoking the statute of limitations where it induced a provider to refrain from filing suit when it did not disclose that the OAL had ruled the methodology had not been lawfully promulgated as a regulation pursuant to the APA.

I. *The applicable statute of limitations is Welfare and Institutions Code section[5] 14171, subdivision (k).[6]*

Appellant filed a writ petition seeking to compel the Department to refund the amount he had paid to it following an audit finding that he had overcharged the state for Medi-Cal services he had provided. Based on a sample of appellant's records for services rendered from December 1978 through March 1980, the Department used a statistical and extrapolation methodology to determine the amount of the overpayment.

The court denied the writ petition on the basis that the cause of action was barred by the six-month statute of limitations contained in section 14171, subdivision (k) and *Union of American Physicians & Dentists* v. *Kizer* (1990)

for the first time in appellant's reply brief, he attempted to appeal that ruling. This court will not consider points raised for the first time in a reply brief for the obvious reason that opposing counsel has not been given the opportunity to address those points (see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, pp. 484-485), particularly in a case such as this one where appellant ignored the court's ruling and used evidence which had been ruled inadmissible to support his brief.

[5]Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

[6]This provision was part of this statute when it was originally enacted. (Stats. 1977, ch. 1046, § 6, p. 3172.) However, its subdivision heading has been redesignated as the section has been amended. At the time of the hearing on the writ petition, it was designated as subdivision (k). (See Amendments, Deering's Ann. Welf. & Inst. Code (1985 ed.) § 14171, pp. 556-557 and § 14171 (1993 pocket supp.) pp. 287-288.)

223 Cal.App.3d 490 [272 Cal.Rptr. 886] (*UAPD*). We presume that the court impliedly rejected appellant's arguments that the statute of limitations was tolled and that the Department was estopped from raising that defense, and the burden is on appellant of proving reversible error. (*In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575 [187 Cal.Rptr. 200].)

Review of those decisions is a question of law for this court's independent determination, namely whether the trial court properly applied the statute of limitations. (See *Grier* v. *Kizer* (1990) 219 Cal.App.3d 422, 434 [268 Cal.Rptr. 244]; *Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 625 [232 Cal.Rptr. 50].)

■ Citing *Grier* v. *Kizer, supra,* 219 Cal.App.3d 422 and *UAPD, supra,* 223 Cal.App.3d 490 [272 Cal.Rptr. 886], appellant contends that section 14171, subdivision (k) does not preclude his seeking relief. In *Grier,* the court determined that the sampling and extrapolation methodology used in this case was an improper regulation since it had not been promulgated pursuant to the APA and that the Department's failure to comply with the APA rendered the method invalid and unenforceable. (*Grier* v. *Kizer, supra,* 219 Cal.App.3d at pp. 438, 440.)

The court also determined that Dr. Grier's challenge to the Department's authority to use the sampling technique was not untimely, although he raised the issue for the first time in his petition for writ of mandate, because of the futility exception to the exhaustion of administrative remedies doctrine. (219 Cal.App.3d at pp. 430-431.) Appellant likewise raised the issue of the lawfulness of the methodology for the first time in his writ petition. However, Dr. Grier filed his writ petition within six months of the Department's decision. (*Id.,* at p. 429.)

Appellant claims that in *UAPD,* the court held that the failure to request a hearing (i.e, the failure to pursue administrative remedies) or the failure to seek judicial review within six months did not bar seeking relief. Although the court mentions section 14171, the latter issue was not addressed by the court.

The court stated: "In view of the futility of litigating the APA issue at the administrative level, the desirability of avoiding piecemeal litigation, and the fact the UAPD suit is a broad challenge to certain Department practices, we conclude to the extent UAPD members who did not pursue an administrative appeal base their claim for recovery of audit payments on the Department's unlawful use of underground regulations, their failure to exhaust the administrative remedy [pursuant to California Code of Regulations, title 22, section 51022, subdivision (b), providers were required to request a hearing on

any disputed audit finding within 30 days] is not fatal to their claims. [¶] Our holding in this regard is narrow. We merely hold that on remand, the Department cannot invoke the failure by individual providers to pursue or exhaust their administrative remedies to deny their claims for reimbursement of monies paid pursuant to improper audits." (*UAPD*, *supra*, 223 Cal.App.3d 490, 503-504.)

However, *UAPD* was a suit by an organization of individuals pursuant to Code of Civil Procedure section 1085. (223 Cal.App.3d at p. 495.) The court noted that the issues presented did not involve disputed audit findings after a hearing, but rather the Department's authority to utilize its underground regulations in auditing providers. (*Id.*, at p. 503.) The court concluded: "Thus, while individual UAPD members were entitled to avoid exhaustion of administrative remedies, they were still required to file suit in the trial court within the applicable statute of limitations." (*Id.*, at p. 504, fn. 5.) Since *UAPD* was a suit by an organization, it is not possible to determine whether the individual members had filed suits, much less whether any suits filed were filed in a timely manner, in the trial court.

Appellant argues that section 14171 does not apply because he is excused from exhausting his administrative remedies. Filing suit within six months of the Director's final decision is not an administrative remedy—it is a step to be taken after administrative remedies have been completed. The issue before this court is not the exhaustion of administrative remedies but the applicable statute of limitations.

Although appellant's petition was designated as being pursuant to Code of Civil Procedure sections 1085 and 1094.5, since *Grier* and *UAPD* had already determined that the methodology was unlawfully adopted, appellant's petition was nothing more than an attempt to challenge his own individual audit decision. A Code of Civil Procedure section 1094.5 petition is the only means by which to challenge an individual audit decision. (See *Pacific Coast Medical Enterprises* v. *Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 203 [189 Cal.Rptr. 558].) Thus, we conclude that section 14171, subdivision (k) is the applicable statute of limitations.

Section 14171, subdivision (k) provides that: "The final decision of the director shall be reviewed in accordance with Section 1094.5 of the Code of Civil Procedure within six months of the issuance of the director's final decision." The Director's final decision was issued on January 14, 1988. Appellant filed a petition for a writ of mandate on January 10, 1991, nearly three years after the Director's final decision. Thus, appellant's petition was not filed within the applicable statute of limitations.

II. *The Department is not equitably estopped from raising the statute of limitations nor is the statute of limitations tolled.*

A. *Tolling*

 Appellant contends that the statute of limitations should be tolled because the Department fraudulently concealed the basis of his cause of action. Although appellant admits that the failure to state facts only rises to the level of fraud when there is duty to disclose (see 3 Witkin, Cal. Procedure, *supra*, Actions, §§ 533-535, pp. 561-563), he argues that such a duty existed in this case. According to appellant, prior to the OAL determination, the Department acted as if it had authority to use the audit method, and therefore, once it did not appeal the OAL determination, it had a duty to dispel the public misconception it was acting in good faith and notify providers of the ruling, but instead it remained silent and pursued its claim against him, which amounted to a deliberate decision to conceal a material fact, i.e., the OAL ruling. In appellant's opinion, the Department's request that he pay the amount owed was a fraudulent misrepresentation of authority.

Appellant cites no authority supporting any such duty for a public agency to reveal adverse rulings which are part of the public record. (See *MST Farms* v. *C. G. 1464* (1988) 204 Cal.App.3d 304, 306 [251 Cal.Rptr. 72].) Neither does appellant argue that the OAL ruling was binding on the Department, nor does he assert that knowledge of the OAL ruling was a fact exclusively within the Department's knowledge.

It is apparent from the discussion in *Grier* that in 1979, the Legislature established the OAL and charged it with the orderly review of administrative regulations to see whether in enacting an administrative regulation, the agency had substantially complied with the APA (unless the agency did so, the regulation was without legal effect). (*Grier* v. *Kizer, supra*, 219 Cal.App.3d 422, 431.) The court noted that the Department had consistently maintained it had the authority to utilize the audit method even after the OAL's 1987 determination finding the method to be an invalid regulation. (*Ibid.*)

OAL determinations as to whether a rule is a regulation are filed with the Secretary of State and published in the California Regulatory Notice Register. (219 Cal.App.3d at p. 432.) Moreover, OAL determinations are only entitled to due consideration. (*Id.*, at p. 435; see also Gov. Code, § 11347.5,

subd. (e).) The ultimate resolution of such legal questions, i.e., whether the audit was a regulation, rests with the courts. (See *Physicians & Surgeons Laboratories, Inc.* v. *Department of Health Services* (1992) 6 Cal.App.4th 968, 986 [8 Cal.Rptr.2d 565].)

Appellant paid the amount due in April 1989. The issue before the OAL was whether the audit methodology was a regulation subject to requirements of the APA. (*Grier* v. *Kizer, supra*, 219 Cal.App.3d 422, 429.) Not until the 1990 Court of Appeal decision in *Grier* was it finally determined that the Department lacked the authority to use the audit method. Thus, we conclude there was no basis for tolling the statute of limitations.

B. *Estoppel*

■ Appellant contends that the Department should be equitably estopped from raising the statute of limitations as an affirmative defense because it knew the audit method had not been properly promulgated and the injury to him would be greater than the injury to the public interest if the Department was not estopped. (*La Canada Flintridge Development Corp.* v. *Department of Transportation* (1985) 166 Cal.App.3d 206, 219 [212 Cal.Rptr. 334].)

As already discussed, the Department did not "know" its audit method had not been properly promulgated until the ruling in *Grier*. In terms of injury, appellant argues that it is not clear he would have owed anything if a proper audit had been conducted. Appellant is mistaken. It was clear appellant had overcharged the state for the Medi-Cal services he had rendered. The question raised by the attack on the audit methodology was whether the means (i.e., using a sample of appellant's records) used to determine the final amount of the overcharge based on a sample of overcharges had been properly promulgated. The audit method was later properly enacted and approved by the court in *UAPD* for pending and future audits. (*UAPD, supra*, 223 Cal.App.3d 490, 504-506.)

On the other hand, the public interest in having its taxes spent in an efficient manner would be harmed to the extent of the amount appellant overcharged the state if the Department was estopped from raising the defense. Accordingly, we conclude that the Department should not be equitably estopped from raising the statute of limitations defense.

## DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.

Lillie, P. J., and Johnson, J., concurred.